[No. 21525.   Department Two.   February 18, 1929.]

J. I. KINMAN, *as Trustee, Respondent,* v. WALTER D. ROBERTS *et al., Appellants.*[1]

[1]Reported in 274 Pac. 719.

36

*Lund & Dodds,* for appellants.

*Danson, Lowe & Danson* and *J. D. Campbell,* for respondent.

PARKER, J.—The plaintiff, Kinman, as trustee in bankruptcy, having in charge the affairs of the insolvent Spokane Union Stock Yards Company, a corporation, commenced this action in the superior court for Spokane county, seeking an accounting from the defendant Roberts and the marital community consisting of him and his wife, Minnie L. Roberts, for funds of the company alleged to have been appropriated by him both before and after their marriage. Trial upon the merits resulted in findings and judgment awarding to the plaintiff recovery against Roberts personally in the total sum of $13,875, and also awarding to the plaintiff recovery against the community consisting of Roberts and wife of $5,944 of that sum. Mrs. Roberts was made a defendant only as a member of the community, no personal separate recovery being sought against her.

The defendants Roberts and the community have appealed to this court, challenging the judgment, particularly in that the trial court erroneously disallowed three of their claimed credits of $12,000, $2,500 and $805, respectively. The plaintiff, trustee in bankruptcy, has appealed to this court, challenging the judgment, particularly in that the trial court erroneously refused to charge the community with $1,300 additional, as being appropriated from the funds of the

company by Roberts in the interest of the community, though he was by the judgment personally charged with that sum as an appropriation of the company's funds made by him a few hours before his marriage.

The Spokane Union Stock Yards Company was duly organized as a corporation, under the laws of this state, several years prior to all times here in question. The defendant Walter D. Roberts has been at all times its president, its general manager and a member of its board of trustees. Early in 1926, certainly prior to May of that year, the company became clearly insolvent and unable to meet its obligations, though its unsecured creditors were not then pressing their claims to the extent of actually then forcing the company into bankruptcy. The record rather strongly suggests to our minds that this seeming indulgence on the part of the unsecured creditors was by reason of the fact that the property of the company was so heavily covered by a mortgage, and would be so largely consumed by the payment of its mortgage indebtedness, as to leave little in the way of dividends for unsecured general creditors, in the light of the then appearance of its available assets. In addition to a large general indebtedness, the company was indebted in the sum of $250,000, evidenced by bonds secured by a trust mortgage upon nearly all of its physical property. The interest on this indebtedness had not been paid for more than two years past.

On May 19, 1926, at a meeting of the stockholders of the company, it was unanimously decided to turn over to the trustee under the mortgage all the mortgaged property to save expense of foreclosure proceedings, it being well known that the company was then insolvent. The trustee under the mortgage refused this offer, and sometime later commenced foreclosure proceedings. On June 1, 1926, and for a long time prior

thereto, Roberts was indebted to the company in a sum in excess of $6,000, which indebtedness remains wholly unpaid except as it may have been paid in whole or in part by credit or credits as claimed by Roberts, to be presently noticed. Thereafter, by withdrawals of funds of the company, which were not repaid, Roberts and the community composed of himself and wife became further indebted to the company for a large balance due at the time its affairs passed into the hands of plaintiff as trustee in bankruptcy. This balance, by reason of the dates of the several debits and credits, became chargeable all to Roberts and partly to the community, Roberts and Mrs. Roberts having been married August 18, 1926.

Thereafter on February 18, 1927, the company was duly adjudged bankrupt by the Federal court, when the plaintiff, Kinman, became the duly qualified trustee in bankruptcy, and assumed charge of the affairs of the company.

With these general background facts before us, we proceed to notice, in order, the particular facts and contentions touching the three credit claims of $12,000, $2,500 and $805, made by Roberts and the community, which were denied to them by the trial court; and also the charge claim of $1,300, made against the community by the plaintiff, which was denied by the trial court.

▪ ██  On December 23, 1921, Roberts borrowed from a Spokane bank, for the benefit of the company, $12,-000. This indebtedness was evidenced to the bank by a promissory note signed by Roberts and one Morris, who was also a member of the board of trustees of the company. The proceeds of this loan were turned over to the company, used in its business and became an indebtedness owing by the company to Roberts and Morris. It later, at the instance of Roberts, became a credit upon the books of the company in favor of

Morris. Apparently, Roberts caused this credit to be so made because Morris later paid the $12,000 note given to the bank by giving to the bank a new note therefor, signed by himself and wife alone, Roberts then giving his note to Morris for the amount.

In October, 1922, the company caused to be issued additional shares of stock, as preferred stock, for the purpose of paying this $12,000 indebtedness and other indebtedness owing by the company to its stockholders who had made advances to aid the company's business. Such issuance of stock was agreed to and accepted by such creditor stockholders in payment of the several amounts owing to them, except Morris claims he did not so agree, and that he did not accept the $12,000 stock certificate issued in his name in payment of the indebtedness owing to him. However, a certificate of stock of that par value was made out and signed by Roberts, as president, and attested by the secretary, in the name of Morris as holder of that much of the preferred stock. Morris declined to accept the certificate, but at the request of Roberts he signed the usual blank transfer form printed upon the back of the certificate, and Roberts then assumed possession of it. The books of the company, since the issuance of this stock certificate in 1922, showed it to be regularly issued paid stock. It is plain that it was issued with intent that it be in payment of the $12,000 indebtedness which upon the books of the company stood to the credit of Morris.

In June, 1926, Roberts caused himself to be credited with the sum of $12,000 upon the books of the company; this manifestly upon the theory on his part that the original $12,000 procured by him and Morris for the company was an unpaid indebtedness of the company to them, and that he, by virtue of his dealings with Morris with reference thereto, became the sole creditor of such indebtedness. It seems to us that

this $12,000 of preferred stock must now be held as having been issued and accepted in payment of the $12,000 indebtedness owing by the company to Roberts and Morris; that is, it must now be so held as against Roberts and in favor of the creditors of this insolvent company. Roberts had actual knowledge of the issuance of this stock and the evidencing thereof upon the books of the company. Roberts is not in a position to now successfully assert that the $12,000 indebtedness remains unpaid by the company, and therefore he is not entitled to credit therefor. We conclude that the judgment of the trial court was right in its disallowance of this $12,000 claimed credit made by Roberts.

Prior to 1926, and prior to its insolvency, the company had become indebted to one Treede in the sum of $2,500, evidenced by a promissory note endorsed by Roberts, he thus pledging his personal credit for the benefit of the company. After the company became insolvent, Roberts gave his personal note to Treede for that amount, and took over from Treede the note on which he was obligated for the company as endorser. Roberts then caused himself to be credited upon the books of the company with $2,500 as payment of that note; manifestly upon the theory that he was entitled to credit in that sum as an offset against the $6,000 indebtedness owing by him to the company before its insolvency, he having so satisfied the $2,500 indebtedness owing by the company to Treede, for which he was obligated as endorser for the company before its insolvency. We think he was not thereby purchasing a claim against the company after its insolvency of such nature as was not capable of being used by him as an offset. He was but satisfying an obligation of the company upon which he was bound for the benefit of the company before its insolvency. Thus, we have a $6,000 obligation of Roberts

to the company existing before its insolvency, and a $2,500 obligation of the company to Roberts existing before its insolvency. We are of the opinion that Roberts is entitled to the credit of $2,500 as a set-off against the $6,000 owing by him to the company, and that in so far as the judgment of the trial court denied him such set-off, it is erroneous.

■ In June, 1926, after the company became insolvent, Roberts caused himself to be credited with $805 on the books of the company by reason of having purchased from certain of the bondholders interest coupons of that aggregate amount, representing past due interest upon bonds secured by the $250,000 trust mortgage. To allow this credit in full as a set-off in favor of Roberts, it seems to us would be to allow him an unlawful preference as a general creditor. These coupons represented a part of the debt secured by the trust mortgage. He should first look to the mortgaged property. We are of the opinion that Roberts was not entitled to this claimed credit as a set-off, and that the judgment of the trial court to that effect is correct.

■ On August 18, 1926, prior to the close of banking hours at three o'clock during that afternoon, Roberts received of the company's funds $1,300, and caused that sum to be charged against himself on the books of the company. He and Mrs. Roberts were married at five o'clock that afternoon. The trial court found that this money, with other funds, was deposited in the private bank account of Roberts and "a portion of the same used for community purposes." This is as far as the findings or any evidence in the record go touching the question of how much of this money can be traced to the community. There is no evidence whatever telling us what amount of the money was so used for community purposes. It is too well settled by statute and decisions in this state that property

acquired before marriage is separate property of the one so acquiring it, to call for any citation of authorities here. Thus, it seems plain that this $1,300, at the time of its acquisition by Roberts, became his separate property, except as his title thereto might be challenged by the company or its trustees in bankruptcy.

Some contention is here made in behalf of the plaintiff trustee in bankruptcy that the community should be made to respond in this accounting as a party receiving a portion of the money, directly or indirectly, knowing the unlawfulness of its acquisition by Roberts from the company. The trouble with this contention, as we see it, is that, though conceding one so receiving money or the benefit thereof under such circumstances should be required to account therefor to the one from whom it was originally wrongfully obtained, we have no evidence here measuring the amount of any such recovery upon an accounting. Thus, it seems to us there is no basis for any money judgment being rendered against the community for any determinable portion of the $1,300 received by Roberts from the company a few hours before the marriage. We are of the opinion that the court correctly disposed of this branch of the case favorable to the community.

We conclude that the judgment must be reversed in so far as it denies to Roberts his claimed set-off credit of $2,500 as against the $6,000 owing by him to the company before its insolvency; and that in all other respects the judgment must be affirmed. It is so ordered, and the cause is remanded to the superior court with directions to correct its judgment accordingly.

FULLERTON, MAIN, and FRENCH, JJ., concur.