[No. 28771. Department One. January 13, 1943.]

DORA MENG, *Appellant*, v. SECURITY STATE BANK OF WOODLAND *et al.*, *Respondents.*[1]

*Dale W. Read (Archie M. Hall,* of counsel), for appellant.

*R. J. Boryer,* for respondents.

[1]Reported in 133 P. (2d) 293.

JEFFERS, J.—This is an appeal by plaintiff, Dora Meng, from a judgment of the superior court for Cowlitz county, made and entered on January 17, 1942, wherein the court decreed that a certain judgment entered in cause No. 13540 of Cowlitz county, in which this plaintiff was the plaintiff, and Arthur Deardorff, one of the defendants in this case, was defendant, was not a judgment against the community composed of Arthur Deardorff and Amzel Deardorff, his wife, and was not a community obligation. The court further decreed that the property levied on by virtue of an execution issued in cause No. 13540 was not the separate property of Arthur Deardorff.

The case was tried to the court, and the following are the material facts which the court was entitled to consider: Arthur Deardorff and wife, defendants in this action, who since about 1932 or 1933 have resided, and now reside, at Woodland, Washington, formerly lived in Oregon, near plaintiff, Dora Meng. In 1925, while residing in Oregon, Deardorff and wife made, executed, and delivered to James Deardorff, brother of Arthur Deardorff, their promissory note for six hundred dollars, dated September 1, 1925, due on or before September 1, 1926. The Deardorffs received six hundred dollars cash at the time this note was given. This note was subsequently sold to Dora Meng for five hundred dollars. No cash payments were ever made on this note, but a credit of one hundred sixty-eight dollars was endorsed on the back of the note by Dora Meng, for hauling services rendered by Arthur Deardorff. This credit, according to the endorsement, paid interest to September 1, 1929.

About the same time the above note was given, Mrs. Meng loaned the Deardorffs one hundred dollars, and to secure this sum they made and delivered to plaintiff their promissory note for that amount.

.Mr. Deardorff testified that the money obtained on the six hundred dollar note was used to make payments on a truck, tires, and truck accessories, and the one hundred dollars obtained from plaintiff was used for license for trucks. Mrs. Meng testified that Mrs. Deardorff told her they wanted the one hundred dollars to pay a hired man.

No payments were made on these notes. The trucking business of Mr. Deardorff did not seem to prosper, and Mrs. Deardorff operated a boarding house, from which operation she saved about eight hundred dollars.

The Deardorffs moved to Washington in 1932 or 1933, and they both testified that at that time Mr. Deardorff had nothing but a few pieces of old farm machinery, and Mrs. Deardorff had the eight hundred dollars she had saved from her boarding house venture. With this money they purchased a few cows, leased a place, and started in the dairy business, in which business they have since continued at different locations in Cowlitz county. Both Mr. and Mrs. Deardorff have given all their time to the business, and have put back into the business whatever they have made. They have built up their herd of cattle until they now have over seventy head. During the years they have been in Washington, their bank account has been in Mr. Deardorff's name part of the time, and is now in Mrs. Deardorff's name.

Florian Meng, a son of plaintiff, had called upon defendants several times in Washington, and had tried to get a payment on the notes held by his mother, but had been unable to do so, being told each time by Mr. Deardorff that he could not pay. In 1935, Florian Meng again came to Washington and contacted the Deardorffs, telling them that a payment would have to be made on the notes or the notes renewed. He talked first with Mr. Deardorff at the house, and Mr. Deardorff there made and signed two renewal notes,

one for $142 and one for $852. Mr. Deardorff and Mr. Meng then went to the barn, where Mrs. Deardorff was at the time, and asked her to sign the renewal notes. Mr. Meng testified that, when Mrs. Deardorff was asked to sign, "she said, well, it was not necessary for her to sign; she said it was not necessary for her to sign under the laws of Washington." Mr. and Mrs. Deardorff denied that any such statement was made, but testified that Mrs. Deardorff stated: "I said I was signing no more notes." Mr. Meng then took the notes and left.

Nothing having been paid on the renewal notes in the early part of 1941, Dora Meng brought an action on these notes in Cowlitz county against Arthur Deardorff only (cause No. 13540), and, on May 15, 1941, judgment was rendered in favor of plaintiff and against Arthur Deardorff on the two notes, in the total sum of $1,289.78. Thereafter, Dora Meng caused execution to issue on her judgment in cause No. 13540, and by virtue thereof the sheriff of Cowlitz county levied upon and seized certain property, as the property of Arthur Deardorff, the property levied upon being the dairy herd of the Deardorffs and certain equipment used in connection with the dairy and farm operations.

At about this time, the Security State Bank of Woodland, which claimed to have a chattel mortgage on all the property of the Deardorffs, started to foreclose its mortgage by notice and sale. The bank claimed the indebtedness to it secured by the mortgage was $8,900. Dora Meng, apparently being informed of the action by the bank, then started the present action, making Mr. and Mrs. Deardorff, the bank, and the sheriff of Cowlitz county defendants.

In her complaint, Mrs. Meng alleged that she held a judgment against Arthur Deardorff in cause No. 13540, in the sum of $1,289.78; that the Deardorffs were residents of Cowlitz county, and at all times

therein mentioned were husband and wife; that an execution was issued in cause No. 13540, pursuant to which the sheriff had levied upon and seized certain property of Arthur Deardorff. It was further alleged that the bank had started to foreclose its chattel mortgage, by notice and sale, and that the sheriff intended to sell the property described in the mortgage, being the same property levied upon by plaintiff.

It was further alleged that the amount claimed by the bank was greatly in excess of the actual amount due, and that the bank and the Deardorffs were fraudulently and collusively claiming under the purported mortgage, for the purpose of preventing plaintiff from obtaining any satisfaction upon her judgment.

Plaintiff asked that the sale under the mortgage foreclosure be enjoined; that all such proceedings be transferred to the superior court; and that at the trial plaintiff be adjudged to have a prior claim on the property levied upon. Plaintiff at the same time filed a motion and affidavit for an injunction against defendants. The court thereafter entered a temporary restraining order restraining the sheriff from selling the property covered by the bank's mortgage.

Defendants answered the complaint, asking that the sheriff be restrained from selling the property levied upon by virtue of the execution, and a restraining order was issued. Defendants then filed an amended answer, in which they admitted that plaintiff had a judgment against Arthur Deardorff, and admitted the levy of the execution.

As an affirmative defense, defendants alleged in substance as follows: That the two notes sued on in cause No. 13540 were signed only by Arthur Deardorff, and that the notes were given to cover a prior indebtedness of Arthur Deardorff, which indebtedness was contracted by him while and when he and his wife, Amzel Deardorff, were residing in Oregon and were citizens

of that state, and at a time when Arthur Deardorff and Amzel Deardorff were husband and wife; that such prior indebtedness was payable in Oregon, was not for necessities of the family, and was the personal obligation of Arthur Deardorff; that, although requested by plaintiff, Mrs. Deardorff refused to, and would not and did not, sign the renewal notes, or either of them; that the prior indebtedness was a separate, individual debt of Arthur Deardorff, enforcible only against his separate property, by the laws of the state of Oregon, and will bind neither the community property acquired in the state of Washington nor the separate property of Amzel Deardorff.

It is further alleged that the property levied upon by plaintiff in cause No. 13540 is not now and never was the separate property of Arthur Deardorff, but is property acquired by Arthur Deardorff and wife by their work and efforts while living and residing in Washington, and is either community property or the separate property of Amzel Deardorff; that the state of Oregon is not a community property state. Defendants then pleaded the Oregon laws pertaining to the rights of husband and wife in Oregon to hold and acquire property, and pertaining to this obligation incurred in that state.

Plaintiff by her reply denied the affirmative matter in defendants' answer, and alleged that the property levied upon by her was at all times partially community property and partially the separate property of Amzel Deardorff.

After a hearing the court made and entered the judgment first hereinabove referred to, and dismissed plaintiff's action with prejudice.

The errors assigned are in denying plaintiff's motion to grant judgment for plaintiff at the close of defendants' case, for failure of the defendants to overcome the presumption that the judgment in case No. 13540

was against the community; in granting judgment for the defendants; and in failing to give judgment for plaintiff in accordance with her complaint.

As indicating the theory upon which the case was tried, and the issues presented, we find on page 6 of the statement of facts the following:

"By the Court: The only issue before me now, as I see it, as you have shaped it up, is the question whether this is a community judgment or not [judgment in cause No. 13540]. It is presumably a community judgment, or presumed to be, supposed to be, and the bank and Mr. Deardorff and Mrs. Deardorff claim it is not. So I am going to rule that the burden of proof rests upon defendant.

"This is a matter of order of proof. I think at this time for the purposes of this trial at least, it is presumed to be a community judgment, and under this rule it is up to you [defendants] to destroy that presumption and show by affirmative defense it is not a community judgment."

We are of the opinion that, under the facts in this case, the property levied upon by appellant in cause No. 13540 was the community property of Mr. and Mrs. Deardorff. This being true, if the judgment in cause No. 13540 was, in fact, the separate obligation of Mr. Deardorff, appellant was not entitled to have that judgment satisfied out of the property levied upon, it being community property. On the other hand, if the judgment was an obligation of the community, appellant was entitled to have the judgment satisfied out of this property, provided her rights were superior to the rights of the bank. However, the question of any rights as between the bank and appellant is not before us at this time.

It is so well settled in this state as to require no citation of authority that, when a husband alone signs a note, it is presumably a community obligation,

which presumption may be overcome by evidence that is clear and convincing. *Auernheimer v. Gardner,* 177 Wash. 158, 31 P. (2d) 515. It is also as well settled that a judgment rendered against a married man is presumed to be a community obligation. *Van Geest v. Stocks,* 198 Wash. 218, 88 P. (2d) 406.

We have, then, in this case, a judgment rendered in this state against Arthur Deardorff, a married man, based upon two notes signed only by himself. We must start, then, with the presumption that the judgment rendered in cause No. 13540 was a community obligation.

Respondents, to overcome this presumption, produced testimony to show that the notes upon which the judgment was based were renewals of two notes given by Mr. and Mrs. Deardorff in 1925, while respondents lived in Oregon. It was further shown that Oregon is not a community property state, and that Oregon has no community property ownership or debt liability.

We are then confronted with the question, under what state should the debt liability of Mr. and Mrs. Deardorff be determined? We are satisfied that such debt liability, based upon the renewal notes, must be determined by the laws of the state wherein the original obligation was incurred, or in other words, by the laws of Oregon.

We stated in the early case of *La Selle v. Woolery,* 14 Wash. 70, 44 Pac. 115, 53 Am. St. 855, 32 L. R. A. 75, that

"The character of the property, as regards the question of its being the separate property of either of the spouses, or the property of the community consisting of both spouses or otherwise, is fixed by the law of the state where such property, if real property, is situated. So, too, the character of the debt is determined by the law of the place where it arose. If by the law

of Wisconsin it was the sole individual debt of the husband, it retained that character here. Its status was fixed by the law of the place of its creation. The debt which the appellants are here seeking to enforce, being by the law of Wisconsin where it arose merely the separate individual debt of the husband, enforcible only against his separate individual property, it follows that the judgment rendered upon that debt cannot be satisfied out of the real property of the community acquired in this state long after the debt arose and judgment was rendered upon it."

The rule announced in the *La Selle* case, *supra,* was cited with approval in *Clark v. Eltinge,* 29 Wash. 215, 69 Pac. 736.

The rule above announced is equally applicable to community personal property.

In the case of *Huyvaerts v. Roedtz,* 105 Wash. 657, 178 Pac. 801, the plaintiff, Huyvaerts, recovered judgment against Andre Roedtz, and thereafter caused a writ of garnishment to be issued and served upon one Johnson. The garnishee answered that he had funds in his possession which were the property of Emma Roedtz, wife of defendant Andre Roedtz. This affidavit was controverted. Mrs. Roedtz filed a complaint in intervention, to which plaintiff demurred. The demurrer being overruled, plaintiff elected to stand thereon. Judgment was entered discharging the garnishee. Plaintiff appealed.

The facts which we assume appear in the complaint in intervention are these: The transaction which was the basis of the judgment in the principal action occurred in the state of Illinois, where the parties at that time resided. Thereafter, Mr. and Mrs. Roedtz moved to this state, and accumulated certain community property. The funds derived from the sale of this property were sought to be reached while in the possession of the garnishee defendant. Under the laws of Illinois,

the debt there contracted, and which was the basis of the judgment in the principal action, was the separate debt of the husband. In that state there was no community law. In the course of the opinion, we stated:

"The sole question here for determination is whether community personal property in this state can be taken to satisfy the separate debt of the husband, contracted in the state of Illinois, in which state there was no community law.

"The debt, being the separate debt of the husband in the state where it was contracted, was likewise his separate debt when judgment was obtained thereon in this state. The character of the debt is determined by the law of the place where it arose. *La Selle v. Woolery*, 14 Wash. 70, 44 Pac. 115, 53 Am. St. 855, 32 L. R. A. 75.

"The debt, being the separate debt of the husband, cannot be satisfied out of the community personal property. *Schramm v. Steele*, 97 Wash. 309, 166 Pac. 634."

The *Schramm* case referred to in the foregoing quotation is a well considered opinion, and expressly overrules the earlier cases of *Powell v. Pugh*, 13 Wash. 577, 43 Pac. 879; *Gund v. Parke*, 15 Wash. 393, 46 Pac. 408; and *Morse v. Estabrook*, 19 Wash. 92, 52 Pac. 531, 67 Am. St. 723.

Under the Oregon laws, as pleaded and proved, the original notes, having been signed by both Mr. and Mrs. Deardorff, could have been satisfied from the separate property of either, and had Mrs. Deardorff signed the renewal notes, a judgment rendered thereon would have imposed on Mr. and Mrs. Deardorff the same obligation as that created by the original notes. The renewal notes being signed only by Mr. Deardorff, and taking the same status as the original notes, in so far as Mr. Deardorff is concerned, and the original notes not having been given for a family expense, as defined by the laws of Oregon, the renewal notes and the judg-

ment rendered thereon became the separate obligation of Mr. Deardorff only.

That the status of the renewal notes, as to the character of the debt created thereby, was the same as that created by the original notes, see *First National Bank of Juneau v. Estus,* 185 Wash. 174, 52 P. (2d) 1243.

However, appellant contends that there was sufficient consideration flowing to the community, by the giving and accepting of the renewal notes, to make the judgment rendered thereon a community obligation, arguing that the release of Mrs. Deardorff from the original notes and the extension of time of payment constitute consideration to the community. While we do not desire to be understood as holding that under certain conditions these renewal notes might not have been made a community obligation, we are satisfied that it does not appear from the facts in this case that the renewal notes were given or accepted because of any agreement to substitute the credit of the community in consideration of the release of Mrs. Deardorff from the obligation of the original notes, nor does the evidence establish that the extension of time granted to Mr. Deardorff was given in consideration of the community's assuming liability on the renewal notes. Neither does it appear that in signing the renewal notes Mr. Deardorff was acting as the agent of Mrs. Deardorff.

In other words, the trial court was, in our opinion, justified in concluding that the matter of the renewal notes was a transaction between appellant and Mr. Deardorff, and that, in receiving the renewal notes, appellant gave up nothing of value which she held against the community.

The judgment of the trial court in determining that the obligation created by the judgment in cause No. 13540 was the separate and individual obligation of

Mr. Deardorff was right, and it follows that such judgment cannot be satisfied from the community property of Mr. and Mrs. Deardorff levied upon.

The judgment is affirmed.

ROBINSON, BEALS, MILLARD, and STEINERT, JJ., concur.