[No. 33000.  Department Two.  March 11, 1955.]

Armin Maag, *Respondent*, v. Nick Voykovich *et al.*,
*Appellants.*[1]

Wright, Booth & Beresford, for appellants.

T. C. Boyle and Chester A. Lesh, for respondent.

Per Curiam.—A jury in a King county superior court
brought in a verdict for two thousand dollars for the plain-
tiff Armin Maag for injuries sustained in consequence of an
assault by Nick Voykovich at King Cove, Alaska.

The trial court decided as a matter of law that if Voyko-
vich was liable, it was a community obligation, and the
judgment was entered against Nick Voykovich (individu-
ally), and against Nick Voykovich and Eugenia N. Voyko-
vich as a marital community.  There was no appeal from the
judgment against Nick Voykovich, but the Voykoviches
appealed from the judgment against them as members of
a marital community.

[1]Reported in 280 P. (2d) 680.

We shall assume that the trial court was correct in concluding as a matter of law that the judgment was a community obligation or, rather, that it would have been if the assault had been committed in the state of Washington. However, the tortious conduct of Voykovich occurred in Alaska. It is stipulated that a marital community is not known or recognized under the laws of the territory of Alaska, and that the rights, duties, and responsibilities of a husband and wife under the laws of that territory were and are measured, defined, and provided by the common law.

■ The law of the place where a tort is committed controls the questions in connection with the act, the responsibility therefor, and the nature of a cause of action based thereon. *Richardson v. Pacific Power & Light Co.* (1941), 11 Wn. (2d) 288, 118 P. (2d) 985; *Mountain v. Price* (1944), 20 Wn. (2d) 129, 146 P. (2d) 327.

It is undisputed that, under the common law in Alaska, the judgment would be against Nick Voykovich personally for the assault that he had committed, and that no judgment could be had against Mrs. Voykovich personally therefor. That would also be the result in Washington. In Alaska, however, there could be no judgment against Mr. and Mrs. Voykovich as members of a marital community because there is no such status as membership in a marital community in that territory. In Washington, under the situation as we have assumed it to be, there could be a judgment against Mr. and Mrs. Voykovich as members of a marital community.

■ Under our holdings, the law applicable in Alaska having been pleaded and stipulated, there can be no judgment binding on the marital community in Washington for a tort committed in Alaska under circumstances where Nick Voykovich alone would be liable. See *Mountain v. Price, supra.*

The following are contract and not tort cases, but their reasoning likewise leads to the same result. *La Selle v. Woolery* (1896), 14 Wash. 70, 44 Pac. 115; *Clark v. Eltinge* (1902), 29 Wash. 215, 69 Pac. 736; *Clark v. Eltinge* (1904),

34 Wash. 323, 75 Pac. 866; *Huyvaerts v. Roedtz* (1919), 105 Wash. 657, 178 Pac. 801; *Curtis v. Hickenbottom* (1930), 158 Wash. 198, 290 Pac. 822; *First Nat. Bank of Juneau v. Estus* (1936), 185 Wash. 174, 52 P. (2d) 1243; *Meng v. Security State Bank of Woodland* (1943), 16 Wn. (2d) 215, 133 P. (2d) 293; *Achilles v. Hoopes* (1952), 40 Wn. (2d) 664, 245 P. (2d) 1005.

The trial court erred in entering judgment against the Voykoviches as members of a marital community.

The portion of the judgment appealed from is reversed, and the words "and the marital community consisting of defendants Nick Voykovich and Eugenia N. Voykovich his wife" will be deleted from the judgment.

Hill, J. (concurring in the result)—I concur in the result of the foregoing *per curiam* opinion solely on the basis of *stare decisis.*

Washington has reached what seems to me a manifestly unjust result, whereby a debt, which is a separate debt of the individual contracting it in the state where it arises, cannot be collected out of the community assets in this state, although had the obligation been incurred in this state, it would have been considered a community obligation.

We have applied the same rule to tort liability in *Mountain v. Price* (1944), 20 Wn. (2d) 129, 146 P. (2d) 327, and again apply it in the instant case. The result is that if Nick Voykovich had assaulted the plaintiff in this state, there would have been a community liability, but because he committed the assault in Alaska, the plaintiff cannot collect his judgment out of community assets. See the contract cases cited in the *per curiam* opinion, and Goodrich on Conflict of Laws, Hornbook Series, (3d ed.) § 126, p. 392.

Harold Marsh, Jr., in his book "Marital Property in Conflict of Laws" at p. 153 thereof, pinpoints the situation in his reference to the rule as it relates to torts committed by the husband as established by *Mountain v. Price, supra,* where he says:

"According to the reasoning of the Washington court, if the plaintiff in *Mountain v. Price* had not gotten a judgment

in the Oregon court but had sued first in Washington, he still would not have been permitted to levy on community property. By the rationale of this case, if a married man domiciled in Washington should drive down the highway on 'community business' and negligently strike Plaintiff A ten feet on the Washington side of the state line, and then negligently strike Plaintiff B ten feet on the Oregon side of the line, and both sued in the Washington court, Plaintiff A could levy on community property to satisfy his obligation but Plaintiff B could not. This is not the result of applying Oregon law to the second case (although the court thought so), but an arbitrary discrimination by the Washington court."

This ruling in the tort cases was foreshadowed by the series of contract cases cited in the *per curiam* opinion, beginning with the much criticized case of *La Selle v. Woolery* (1896), 14 Wash. 70, 44 Pac. 115, in which we held that a judgment in this state upon a debt created in Wisconsin which, by the laws of that state, was a separate individual debt of the husband (though it would have been a community obligation if contracted here), could not be collected from community property. This is, as Marsh points out, attributable to a failure to recognize a distinction in meaning between the word "separate" as used in Washington and Wisconsin, as applied to debts and property, and he says (p. 150):

"Nevertheless, the court purported to find that by the law *of Wisconsin* this debt was a 'separate' or 'noncommunity' debt of H, and gave judgment for the defendants. How was it possible to find such a rule in the law of Wisconsin? The reasoning is very simple. The court found assertions in the Wisconsin decisions that debts incurred by the husband in that state were his 'separate' debts, meaning thereby that the 'separate' property *of the wife* was not liable for them. Of course, *every debt* contracted by the husband in Wisconsin would be a 'separate' debt in this sense. The Washington court then reasoned as follows: This debt of the husband is a 'separate' debt by the law of Wisconsin [meaning, 'not chargeable upon the wife's "separate" property']. The law of the place of making of the contract [Wisconsin] governs the 'character' of the debt. Therefore, this is a 'separate' debt of the husband [meaning, 'not chargeable upon the community property of husband and wife']. The

verbal fallacy in this argument is about as obvious as that in the old syllogism: All batteries are torts. An automobile has a battery. Therefore, an automobile is a tort."

Marsh, with some degree of justifiable sarcasm, says that it behooves creditors in the other states to be careful about extending credit to Washington domiciliaries, but "there is not much precaution one can take against being run down by a Washington married man." Marsh, *supra*, p. 152. On the next page, he suggests that the holding in *Mountain v. Price, supra,* "probably could be successfully attacked under the due-process clause," as an arbitrary and capricious discrimination against a foreign cause of action.

Of the community property states, Arizona alone has a similar law which holds that community property is not liable for "separate" obligations of the husband. The ninth circuit court of appeals in *Babcock v. Tam,* 156 F. (2d) 116 (C. C. A. 9th, 1946) in a case involving Arizona law, applied Arizona law to determine whether the tort committed by the husband in California created a "separate" or "community" liability. Marsh, *supra,* p. 154, notes regrettably that:

"Unfortunately, an examination of the briefs in that case shows that there was no argument on the choice-of-law question, and no one urged that California law should be 'applied' in the way the Washington court thought it was 'applying' Oregon law. [referring to the *Mountain* case, *supra*]"

Marsh suggests that the problem involves a question of "characterization" of the defense asserted by the appellant that community property is not liable for the "separate" obligations of the husband. Rather than characterizing this defense as one of contract law or tort law, governing the meaning of "separate" by the law of the place of contracting or of the place where the tort was committed as the prior Washington cases by inference have done, it should be "characterized" as a marital-property rule, governing the meaning of "separate" by the law of the domicile of the husband and wife at the time of the acquisition of the property, which, in this case, would be Washington.

Goodrich suggests as a solution to the problem that the Washington courts should give the creditor in a foreign transaction the same rights against a Washington domiciliary that we would give a creditor had the transaction taken place in this state. Goodrich on Conflict of Laws, *supra*, p. 394.

Whether Goodrich would attempt to apply the same solution to the rights of a person injured in a foreign jurisdiction in consequence of a tort committed by a Washington domiciliary, is not indicated.

Whether there is merit in the suggestion herein referred to that our opinions in this field are subject to attack on constitutional grounds, I do not know, and that issue is not now and has not heretofore been presented to us.

Although I signed the opinion in *Achilles v. Hoopes* (1952), 40 Wn. (2d) 664, 245 P. (2d) 1005, I am now convinced that the result in that case and in *Mountain v. Price*, *supra*, and in the cases which preceded them, and on the basis of which they were decided, is wrong. This concurring opinion is written in the hope that it may help to focus attention on the problem (and perhaps in some measure to clarify it) and perhaps lead to legislative action.

May 3, 1955. Petition for rehearing denied.