[No. 35161.   *En Banc.*   October 26, 1961.]

ESCROW SERVICE CO., INC., *Respondent,* v. GEORGE E. CRESSLER
*et al., Appellants.*\*

*Charles B. Welsh,* for appellants.

*Eisenhower, Hunter & Ramsdell,* for respondent.

OTT, J.—The stipulated facts in this case are as follows: Escrow Service Co., Inc., an Oregon corporation, is engaged in the finance business in that state. George E. Cressler and Pauline G. Cressler are husband and wife. During all of the time here in question, they were residents of the state of Washington and, as a community, owned real property in Grays Harbor County. George Cressler, with the knowledge and consent of his wife, used community funds

\*Reported in 365 P. (2d) 760.

to purchase a retail lumber and hardware business in Portland, Oregon, which was operated as a partnership with C. William Nau, under the firm name of Western Lumber Company.

July 2, September 10, and December 26, 1956, George Cressler and C. William Nau borrowed from Escrow Service Co., Inc., in Portland, a total of $6,000 on their personal notes. The checks for the loans were made payable to Western Lumber Company, deposited in the partnership account, and used in the business.

Thereafter, George Cressler purchased the interest of C. William Nau, assumed the partnership liabilities, and continued the firm name. The business subsequently failed.

Escrow Service Co., Inc., commenced this action against George E. Cressler and wife, in Grays Harbor County, Washington, to recover judgment upon the notes which had been executed by the husband in Oregon, and attached the real property of the community.

George Cressler's answer admitted his execution of the notes, but denied that they constituted a community debt. Pauline Cressler appeared individually, denied separate liability, and, as a member of the community, denied community liability for the reason that the obligation relied upon was, under the Oregon law, the separate obligation of her husband; hence, not a community debt.

From a judgment adjudicating the debt to be a community obligation, George and Pauline Cressler have appealed.

Appellants' sole contention is that the court erred in its determination that the debt was a community obligation. We agree with appellants' contention.

The law of the state of Oregon relating to obligations incurred by the husband alone (ORS 108.020) provides:

"Neither husband nor wife is liable for the debts or liabilities of the other incurred before marriage; and except as otherwise provided in ORS 108.040, they are not liable for the separate debts of each other, nor is the rent or income of property owned by either husband or wife liable for the separate debts of the other."

(The exception provided in ORS 108.040 is not material to this proceeding.)

ORS 108.050 provides:

"The property and pecuniary rights of every married woman at the time of her marriage or *afterwards acquired* including real or personal property acquired by her own labor during coverture, shall not be subject to the debts or contracts of her husband." (Italics ours.)

Debt liability is determined by the laws of the state where the obligation is incurred. *Maag v. Voykovich,* 46 Wn. (2d) 302, 280 P. (2d) 680 (1955). The legislature of the state of Oregon, in the exercise of its discretion, enacted the cited statutes which plainly provide that property of the wife "shall not be subject to the *debts* or *contracts* of her husband." (Italics ours.) An executed promissory note is a contract for the payment of money. The character of the debt and the extent to which property will be subjected to execution are policy determinations resting solely within the discretion of the legislature of the state where the obligation is incurred.

The maxim of *lex loci contractus* has been applied continuously to such cases in this state since 1896. In *La Selle v. Woolery,* 14 Wash. 70, 44 Pac. 115 (1896), this court held that a contract entered into in the state of Wisconsin by the husband alone was his separate debt, collectible only in Wisconsin from his separate property, and that the status and character of the debt did not change by instituting a suit thereon in the state of Washington.

In *Achilles v. Hoopes,* 40 Wn. (2d) 664, 245 P. (2d) 1005 (1952), this court applied the maxim of *lex loci contractus* to an obligation incurred in Oregon by the husband alone, and said:

"The defendants are husband and wife and have been such at all times material to this case. . . .

"The community or separate character of a debt incurred by the husband is determined by the law of the place where it arose. *La Selle v. Woolery,* 14 Wash. 70, 44 Pac. 115 (1896). This rule has been cited with approval in the following cases: *Clark v. Eltinge,* 29 Wash. 215, 223, 69 Pac. 736 (1902); *Huyvaerts v. Roedtz,* 105 Wash. 657, 658, 178

Pac. 801 (1919); *Meng v. Security State Bank,* 16 Wn. (2d) 215, 133 P. (2d) 293 (1943). See *Great American Indemnity Co. of New York v. Garrison,* 75 F. Supp. 811 (1948); 1 de Funiak, Principles of Community Property, 532, § 186 and comment in note 76.

"We have examined the authorities cited by plaintiff in support of the rule for which he contends, and have also read the discussion of this and other rules in 2 Beale, Conflict of Laws, 1077 *et seq.,* § 332.1; 2 Rabel, Conflict of Laws, 357 *et seq.,* chapters 28 to 33 inclusive, and some of the authorities these authors cite. We find no sufficient reason to depart from the long established rule expressed in our cited cases. . . .

"The law of Oregon, proven in this case, created no community obligation on the note, and there is no basis for the assertion of a contract between the plaintiff and the community. See 2 Beale, op. cit. *supra,* 1090, § 332.4; Restatement, Conflict of Laws, 409, 410, 413, 438, §§ 332 (d) comment c, 336, 358 comment b. Being inherently the separate obligation of the husband when created, by the law of the state where it arose, it retains that character and is free of any presumption that it is a community obligation. Recovery cannot be had against the community for the separate obligation of one spouse. *La Selle v. Woolery, supra,* and *Smyser v. Smyser,* 17 Wn. (2d) 301, 135 P. (2d) 455 (1943), and cases cited."

In *Mountain v. Price,* 20 Wn. (2d) 129, 146 P. (2d) 327 (1944), the appellant sued in this state upon an Oregon judgment and raised the identical contention now urged by respondent. We rejected the contention, stating [p. 136]:

"In the case at bar, appellant sued respondent on the judgment which she recovered against him before the Oregon court, and was awarded, by the judgment appealed from, the same judgment she recovered in Oregon. The fact that an execution issued upon the judgment now before us for review may be less effective in reaching property from which appellant desires to satisfy her judgment than would be an execution issued upon the Oregon judgment is immaterial."

█ The Washington community property statute relating to separate debts, RCW 26.16.200, provides, *inter alia:*

"Neither husband or wife is liable for the debts or liabili-

ties of the other incurred before marriage, *nor for the separate debts of each other,* . . ." (Italics ours.)

Under this statute, community property has never been held liable for the separate obligation of either spouse. A partial list of the cases which hold that the community is not liable for the separate debt of the husband is as follows: *Smith v. Retallick,* 48 Wn. (2d) 360, 293 P. (2d) 745 (1956); *Maag v. Voykovich,* 46 Wn. (2d) 302, 280 P. (2d) 680 (1955); *Achilles v. Hoopes,* 40 Wn. (2d) 664, 245 P. (2d) 1005 (1952); *Smyser v. Smyser,* 17 Wn. (2d) 301, 135 P. (2d) 455 (1943); *Meng v. Security State Bank of Woodland,* 16 Wn. (2d) 215, 133 P. (2d) 293 (1943); *Stafford v. Stafford,* 10 Wn. (2d) 649, 117 P. (2d) 753 (1941); *Bergman v. State,* 187 Wash. 622, 60 P. (2d) 699, 106 A. L. R. 1007 (1936); *Curtis v. Hickenbottom,* 158 Wash. 198, 290 Pac. 822 (1930); *Kinman v. Roberts,* 151 Wash. 35, 274 Pac. 719 (1929); *Peterson v. Zimmerman,* 142 Wash. 385, 253 Pac. 642 (1927); *Spokane State Bank v. Tilton,* 132 Wash. 641, 233 Pac. 15 (1925); *Snyder v. Stringer,* 116 Wash. 131, 198 Pac. 733 (1921); *Deering v. Holcomb,* 26 Wash. 588, 67 Pac. 240 (1901); *Stockand v. Bartlett,* 4 Wash. 730, 31 Pac. 24 (1892).

The respondent urges that such cases be overruled, and that the long established common-law maxim of *lex loci contractus* be abandoned.

The respondent contends, first, that the Washington community property law should apply to this Oregon contract for the reason that Oregon has no community property status and the parties should be bound as though the contract had originated in Washington. Respondent cites no cases, and we have found none, wherein the maxim of *lex loci contractus* has been modified to include the laws of the states of each contracting party. The parties may legally contract to be bound by the law of either jurisdiction, but such an exception to the maxim of *lex loci contractus* is not within the purview of the stipulated facts in this case.

Respondent further contends that the Washington law permits the community to become unlawfully enriched, and that the law operates as a hardship upon, and is unfair

to, those out-of-state institutions which finance Washington residents.

█ When a financial institution loans money, it dictates the terms of the contract upon which it will make the loan. After the terms have been agreed upon, the law of the state where the agreement is made determines its validity and its character. *Maag v. Voykovich, supra.* The state law becomes as much a part of the contract as if the applicable statutes were actually written into it. *State ex rel. Washington Toll Bridge Authority v. Yelle,* 56 Wn. (2d) 86, 99, 351 P. (2d) 493 (1960); *Fischler v. Nicklin,* 51 Wn. (2d) 518, 522, 319 P. (2d) 1098 (1958); *Dopps v. Alderman,* 12 Wn. (2d) 268, 273, 121 P. (2d) 388 (1942), and cases cited.

In the case at bar, the loaning institution knew that the borrower was married. His wife was not requested to join as a party in incurring the indebtedness under the Oregon law. By accepting the signature of the husband alone, the loaning institution chose to limit its remedy, in the event of default, to his actual business assets in Oregon and any separate estate he might own in Oregon or elsewhere. The terms of the contract were not drawn to encompass the separate property of the wife or any property in which she had an interest in the state of Oregon or elsewhere. The contract was a lawful one. Under the facts of this case, any hardship or injustice suffered by the financial institution was due solely to its failure to require the wife to join in the contract. If it can be said that the community became "enriched" by the money that the institution loaned to the husband, and which he lost in the Oregon venture, such an enrichment was not unlawful, but the result of legislative policy.

Whether the community property law of the state of Washington should be relaxed or changed in any respect, or abandoned entirely, is solely a legislative determination. In the 1959 session of the legislature, House Bill No. 86 was introduced. The bill contained only one section, which provided:

"An obligation arising out of tort or contract incurred outside the state may be enforced against a marital com-

munity of this state to the same extent as though such obligation had been incurred within the state."

It was read the first time on January 16, 1959, and referred to the Judiciary Committee. On March 12, 1959, by resolution, further consideration of the bill was indefinitely postponed. The legislature did not see fit to change the law.

The problem here presented is one involving the conflict of laws between sovereign states. If it can be said that states are not sovereign and that one should yield to make its laws conform to those of another, which state should yield? Should Washington abandon its community property law and adopt that of the noncommunity property states, or should the noncommunity property states adopt the community property law? To ask the question is to answer it. The sovereignty of each state in enacting its laws must be acknowledged.

For the reasons stated, we adhere to the maxim of *lex loci contractus,* and reaffirm the principles expressed in the cited cases.

The judgment against the community is reversed, and the cause remanded with instructions to vacate that part of the judgment. The judgment against George E. Cressler individually is affirmed. Appellants will recover their costs.

MALLERY, DONWORTH, WEAVER, FOSTER, and HUNTER, JJ., concur.

FINLEY, C. J.—This case was heard *en banc* September 19, 1960. In justice to the writer of the foregoing opinion, it should be stated that it was not reassigned to him for opinion until October 4, 1961.

HILL, J. (concurring)—I concur in the result of the foregoing opinion solely on the basis of *stare decisis.* I am in accord with the reasoning in Chief Justice Finley's dissent and his ultimate conclusion that the rule which we are now applying is ill-advised and unjust. My own views are expressed in a concurring opinion in *Maag v. Voykovich* (1955), 46 Wn. (2d) 302, 280 P. (2d) 680.

FINLEY, C. J. (dissenting)—In this action Escrow Service Co., Inc., an Oregon corporation (hereinafter referred to as respondent), seeks to recover upon certain promissory notes which were executed by appellant George E. Cressler, during the year 1956, in Portland, Oregon. Appellant Pauline G. Cressler, wife of appellant George E. Cressler, did not join her husband in executing the notes. It is undisputed that the notes were given in order to secure funds to finance the operation of an Oregon business, known as the Western Lumber Co., in which appellant husband was a partner, and as to which appellant wife, Pauline G. Cressler, certainly had, to say the least, some community interest. The single question raised in the trial court and on this appeal is whether the appellants' Washington community property can be reached to effect payment and satisfy the promissory note. The trial court answered this question in the affirmative and entered a judgment in favor of the respondent, enforcible against the separate property of appellant husband, and also against the Cressler's community property. This appeal followed.

There can be no question that if the notes, though executed by appellant husband alone, had been executed in the state of Washington community liability would follow, for there was clearly an expectation of community benefit involved in the transaction respecting which the notes were given. *Beyers v. Moore* (1954), 45 Wn. (2d) 68, 272 P. (2d) 626; and cases cited therein. However, appellants urge that in the instant case a different result should be reached because the notes were executed in Oregon, a jurisdiction which, as shown by the pleadings, is not a community-property state. In making this contention, appellants rely upon *Achilles v. Hoopes* (1952), 40 Wn. (2d) 664, 245 P. (2d) 1005. The case, as I read it, is factually indistinguishable from the instant case. In *Achilles* this court held that the community or separate character of a debt incurred solely by a husband is determined by the law of the place where the debt arose, with the result that where such a debt is incurred in a noncommunity-property state there can be no community liability. This holding was based upon the early case of

*La Selle v. Woolery* (1896), 14 Wash. 70, 44 Pac. 115. In that case the defendants, husband and wife, had resided in Wisconsin for a number of years before moving to this state. During the period of their Wisconsin residency, the husband, a contractor and builder, had purchased supplies for his business from the plaintiff. When the husband failed to pay, the plaintiff brought suit in Wisconsin and recovered judgment. However, before the plaintiff was able to obtain satisfaction of his judgment, the defendants moved to the state of Washington. Thereafter, the plaintiff sued in the Washington court, seeking to subject to the lien of his judgment certain property acquired by the defendants after they moved to Washington.

Initially, this court held in favor of the plaintiff-creditor, *La Selle v. Woolery* (1895), 11 Wash. 337, 39 Pac. 663, making the following explanatory statement:

". . . It appears from the statutes set out in the answer that in that state [Wisconsin] there is no such thing as community property as understood here, nor is there any such thing as separate property of the husband as defined by our laws. . . .

"In our opinion the comity which one state owes to another goes to the substance rather than the form of things. If a certain right is given in one state as to property of a certain nature, comity would require that those rights should be enforced in another state as to property of the same nature though it might be called by a different name. In the State of Wisconsin property which was acquired by the joint labors of the husband and wife, though called the property of the husband, was subject to the payment of debts incurred by the husband in the prosecution of business for the support of the family. Property acquired in the same manner in this state belongs to the community but is subject to a liability incurred by the husband alone in the prosecution of business for the same object. . . ."

However, subsequently, the *La Selle* case was reheard (14 Wash. 70, 44 Pac. 115), and a contrary result was reached. Referring to this *about face* in decisional law, Professor Marsh, in Marital Property in Conflict of Laws, comments as follows (p. 150):

"Nevertheless, the court purported to find that by the law *of Wisconsin* this debt was a 'separate' or 'noncommunity' debt of *H,* and gave judgment for the defendants. How was it possible to find such a rule in the law of Wisconsin? The reasoning is very simple. The court found assertions in the Wisconsin decisions that debts incurred by the husband in that state were his 'separate' debts, meaning thereby that the 'separate' property *of the wife* was not liable for them. Of course, *every debt* contracted by the husband in Wisconsin would be a 'separate' debt in this sense. The Washington court then reasoned as follows: This debt of the husband is a 'separate' debt by the law of Wisconsin [meaning, 'not chargeable upon the wife's "separate" property']. The law of the place of making of the contract [Wisconsin] governs the 'character' of the debt. Therefore, this is a 'separate' debt of the husband [meaning, 'not chargeable upon the community property of husband and wife']."

Professor Marsh concludes with the comment that

"The verbal fallacy in this argument is about as obvious as that in the old syllogism: All batteries are torts. An automobile has a battery. Therefore, an automobile is a tort."

In summary, it may be said that, in the first opinion in the *La Selle* case, the court looked beyond the form of things and to the real substance of the matter; whereas, upon rehearing, the court never got beyond matters of form. I am convinced that the approach taken in the second *La Selle* opinion was erroneous and led this court to an inept, unnecessarily inconsistent and unjust result. As noted earlier, had the promissory notes involved in the instant case been executed in Washington, community liability would clearly follow. (In addition, if the notes, though executed in Oregon, had been executed by an Oregon husband who had thereafter remained in Oregon, the respondent-creditor would have been able to reach all property in satisfaction of the debt, except that separately owned by the wife.) Yet, under the reasoning of this court as set forth in the second *La Selle v. Woolery, supra,* opinion (which, concededly, has been followed not only in a number of subsequent "contract" cases, but, also, by analogy in two cases involving torts committed by Washington domicili-

aries while visiting in noncommunity-property states)[1], an inconsistent result is reached. For no other reason than because the notes were executed in Oregon by a husband who, when suit was brought, was a Washington domiciliary, the respondent-creditor is unable to reach any of the property acquired by the appellants subsequent to their marriage, except such property as appellant husband may, perchance, have acquired by gift, bequest, devise or descent (see RCW 26.16.010, defining separate property of a husband).

After considerable reflection on the matter, it is my opinion that we should depart from the demonstrably fallacious reasoning of the second *La Selle* opinion and the subsequent cases relying thereon. Property which a sister state may consider to be "separate" may include property which is characterized in this state as "community". It is equally clear that not all of the property we call "community" may come within the meaning of "separate" in another state. If we were to apply the law of Oregon in this case, we would have to say that the creditor is entitled to levy against all property in this state of the character he could reach in Oregon where the contract was made. (The majority's application of the doctrine *lex loci contractus* results in an application of Oregon labels or characterizations, not Oregon law, because of a failure to recognize the difference between "separate" property in Oregon and "separate" property in Washington.) Since there is no community property law in Oregon, no solution to the problem in this case can be found in Oregon law. Any attempt to superimpose Oregon characterizations with respect to property over Washington characterizations is doomed to endless frustration. The characterizations found in Oregon law

[1]The "contract" cases, in addition to *Achilles v. Hoopes, supra,* are *Meng v. Security State Bank* (1943), 16 Wn. (2d) 215, 133 P. (2d) 293; *Huyvaerts v. Roedtz* (1919), 105 Wash. 657, 178 Pac. 801; and *Clark v. Eltinge* (1902), 29 Wash. 215, 69 Pac. 736. The "tort" cases are *Maag v. Voykovich* (1955), 46 Wn. (2d) 302, 280 P. (2d) 680 (but see Judge Hill's concurring opinion); and *Mountain v. Price* (1944), 20 Wn. (2d) 129, 146 P. (2d) 327.

simply do not fit when juxtaposed with the Washington community property system.

It is my opinion that barren semantic exercises should not bar a creditor on a foreign contract from levying upon property that would be available to him had the contract been executed in Washington. The creditor should not be able to levy on property which is characterized in Washington as the separate property of the wife, Pauline G. Cressler. The creditor should be able to reach that property which is characterized in Washington as the husband debtor's separate property; this is what the present rule declares and what the majority opinion holds. The creditor should also have available to him the property of the community to the same extent that he would have if the contract were executed in Washington.

The majority suggest that overruling the second *La Selle* case would be in effect "judicial legislation," because the legislature deliberately or from lack of time declined to achieve the same effect by statute. I do not believe legislative inactivity in this instance rises to the dignity of a legislative enactment. This is not a situation in which legislative inaction is to be interpreted as tacit approval of judicial interpretation of a statute, for cases of the *La Selle* genre do not require examination of the meaning of our community property statutes but start from the premise that there is, by virtue of those statutes, a clear distinction between community and separate property and go on to determine the effect of the distinction upon foreign judgments.

The legislature has the power to establish rules of evidence, create or abolish bases of liability, and in other ways mold the law to provide rules for the determination of lawsuits. To hold that every bill of such a nature introduced into the legislature but not passed by it is a manifestation of legislative intent and a directive to the courts not to effect a change similar to that attempted by the unsuccessful bill approximates, in my opinion, (1) extreme naivete respecting the nature of the legislative process, and

(2) an abdication of judicial function and responsibility that should not be condoned by resort to legal fiction.

This court, without the aid of the legislature, overruled the first *La Selle* case and established the doctrine of the second *La Selle* case. It is not only within the power of the court, but it is its duty now to abandon the rule which is as ill-advised and unjust today as when it was adopted in 1896.

For the foregoing reasons, I dissent.

ROSELLINI, J., concurs with FINLEY, C. J.

December 6, 1961. Petition for rehearing denied.