[No. 37960. Department Two. March 17, 1966.]

PACIFIC FINANCE CORPORATION, *Appellant*, v. J. ED RAYMER COMPANY, INC., *et al.*, *Respondents.**

*R. G. Schimanski*, for appellant.

*Irwin & Friel*, by *Wallis W. Friel*, for respondents.

FINLEY, J.—This appeal presents a somewhat elementary choice of law problem—whether the law of the place of performance (Washington), the law of the place of execution (Idaho), or some other factor or criteria, should govern the liability of a married woman on a contract of guaranty with respect to her separate property.

The essential facts are as follows: The plaintiff, Pacific Finance Corporation, is a lending institution which was financing, through the medium of trust receipts agreements, the operations of the J. Ed Raymer Company, Inc. The Raymer Company was a closely held and owned corporation which functioned as a Ford Motor Company franchise,

*Reported in 412 P.2d 120.

selling new and used automobiles. J. Ed Raymer and his wife, Arlene J. Raymer, originally operated the franchise as a marital community, with J. Ed Raymer serving as president of the corporation. Because of financial difficulty, which need not be detailed herein, J. Ed Raymer was forced to secure additional financing assistance from his father and mother, Norm F. Raymer and Helen H. Raymer, who are residents of Idaho. Norman F. Raymer thereupon succeeded his son as president of the J. Ed Raymer Company, Inc.

Subsequently, the Pacific Finance Corporation initiated this lawsuit against the J. Ed Raymer Company and all four of the Raymers identified above, both in their separate and marital capacities, for violation of the trust receipts financing agreement. In addition, the plaintiff sued all of the individual defendants and the two marital communities involved on a promissory note executed by all four parties. Both of these underlying obligations are covered by personal guaranties from the defendants, Norm F. Raymer and Helen H. Raymer, to Pacific Finance Corporation which cover all liabilities arising from the operation of the business. The contract of guaranty in question was executed by Helen Raymer in the state of Idaho.

At the time of the commencement of suit, Pacific Finance Corporation attached all of the remaining assets of the J. Ed Raymer Company, including the business located in Pullman, Washington, certain automobiles located on a used car lot in Colfax, Washington, and a bank account at the Pullman Branch of the Seattle-First National Bank. In addition, Pacific Finance Corporation attached certain real property located in Pullman, Washington, which is owned by Helen H. Raymer as her separate property. The characterization of this real estate as separate property is apparently conceded by both of the parties to this appeal.

The J. Ed Raymer Company, Inc., has subsequently been adjudicated bankrupt in federal district court. However, that bankruptcy proceeding is still pending. Furthermore, the defendant, Norman F. Raymer has been adjudicated a bankrupt in the state of Idaho, and has received a discharge.

This appeal is nothing more than a contest between creditors over the aforementioned separate real property of Helen H. Raymer. The intervenor, the Pullman Branch of the Seattle-First National Bank, is the holder of a separate promissory note executed by the defendants, Norman F. Raymer and Helen H. Raymer, in the state of Washington. The bank commenced an action against Norman F. Raymer and Helen H. Raymer, attaching, in the process, the same separate real property of Helen H. Raymer. The bank then moved to intervene in the Pacific Finance Corporation action in order to determine priority rights between it and Pacific Finance—since the latter corporation had been the first to attach Helen H. Raymer's property.

The trial court entered several judgments pursuant to and in conjunction with the aforementioned bankruptcy proceeding, none of which needs concern us here except for the judgment dismissing the claim of Pacific Finance Corporation against Helen H. Raymer in her individual capacity. The underlying basis for this judgment was (a) the fact that the guaranty was executed by Helen Raymer in Idaho, and (b) the trial court's conclusion based thereon that the applicable substantive law under Washington conflict of law principles with respect to her capacity and liability was the law of the *place of execution of the contract of* guaranty; *i.e.*, the law of Idaho. It should be noted that this particular controversy between the two attaching creditors, Pacific Finance Corporation and the Pullman Branch of the Seattle-First National Bank, did not ever come to trial. After a pre-trial conference was held, the trial court entered a memorandum opinion, findings of fact, conclusions of law and judgment dismissing the plaintiff's claim against Helen H. Raymer.

Thus, the question presented for our determination on appeal is entirely legal in nature. What is the conflict-of-laws rule of the forum state (Washington) with respect to the legal liability of a married woman who executes a contract of guaranty? It is conceded by the plaintiff-appellant that, under the law of Idaho, a married woman cannot bind her separate property unless the debt is incurred for the wife's

use and benefit or for the benefit of her separate property; or, unless the married woman has executed a mortgage on specific separate property. It is conceded by the respondent-intervenor that, under the law of Washington, a married woman has the capacity to bind her separate property without such qualification.

We have previously held that the law of the place where the contract was executed will determine its validity and whether it should be characterized as a separate or community debt. *Escrow Serv. v. Cressler*, 59 Wn.2d 38, 365 P.2d 760 (1961); *Maag v. Voykovich*, 46 Wn.2d 302, 280 P.2d 680 (1955); *Achilles v. Hoopes*, 40 Wn.2d 664, 245 P.2d 1005 (1952). The plaintiff-appellant makes a somewhat persuasive argument that we should adopt the so-called "center of gravity" or "points of contact" approach to contracts-choice-of-law problems. The essence of this theory is that the controlling law ought to be the law of the state having the most significant relation, connection, or contact with the contractual undertaking involved. In this respect the appellant can make a compelling argument to the effect that Washington has a substantial and significant connection with this contract of guaranty, since it covers the liabilities of a business which conducted only intrastate (Washington) operations. In addition, both of the underlying obligations—the trust receipts agreement and the promissory note—were Washington debts.

We know and note that the proposed revision of the Restatement of Conflict of Laws adopts the "center of gravity" or "points of contact" approach for the resolution of contracts-choice-of-law problems, and that several jurisdictions have adopted the new approach in one form or another. See, *e.g.*: *Boston Law Book Co. v. Hathorn*, 119 Vt. 416, 127 A.2d 120 (1956); *Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954); *W. H. Barber Co. v. Hughes*, 223 Ind. 570, 63 N.E.2d 417 (1945).

But we have not yet been persuaded to apply this relatively new approach to such conflicts questions in Washington. Our previous emphasis has been on the place of

execution as the controlling factor in contracts-choice-of-law problems where the transaction involves more than one jurisdiction. In addition, we have emphasized the consideration that financial institutions ought to bear the burden of ascertaining the law applicable to a particular contractual undertaking or negotiable instrument with interstate aspects. *Escrow Serv. v. Cressler, supra.* Thus, we would assume that the plaintiff-appellant herein, Pacific Finance Corporation, knew or should have known that, under Washington conflicts principles, the law of the place of execution determines (a) the capacity of parties to contract, or to agree to be a surety; and, correspondingly, (b) the validity of their contractual or suretyship obligations. The Pacific Finance Corporation no doubt dictated the terms of the continuing guaranty executed by Helen H. Raymer in Moscow, Idaho. It is evident that Mrs. Raymer was willing to execute such a broad guaranty because the family business needed financial assistance. It is also evident that Pacific Finance Corporation intended to have Helen H. Raymer's separate property in Pullman, Washington, available in the event the J. Ed Raymer Company defaulted.

It seems to us that Pacific Finance in effect is asking that we alter our presently applicable choice-of-law rule to accommodate or correct its failure to make certain that the guaranty commitment of Helen H. Raymer would legally bind her separate property under the law of Idaho. Actually, Pacific Finance Corporation could have protected itself by either (a) requiring that Helen Raymer execute her guaranty in Washington, or (b) making certain that the guaranty executed by Helen Raymer in Idaho encompassed or bound her separate property under Idaho law.

In any event, we are not convinced that the fact pattern in the instant case is a particularly significant one. For this and the policy reason implicit in the principle of stare decisis, we adhere to our previous decisions and refrain *at this time* from adopting the "center of gravity" or "points of contact" approach to the contracts-choice-of-law problem involved herein. The trial court's dismissal of the

plaintiff's claim involving the separate property of Helen Raymer should be affirmed. It is so ordered.

ROSELLINI, C. J., DONWORTH and WEAVER, JJ., and LANGENBACH, J. Pro Tem., concur.

June 6, 1966. Petition for rehearing denied.