[No. 23607. Department Two. April 8, 1932.]

WILLIAM STEWARD, *Respondent*, v. L. E. BOUNDS *et al.*, *Appellants.*[1]

LaBerge, *Cheney & Hutcheson, H. B. Gilbert,* and *I. J. Bounds,* for appellants.

*Shumate & Clarke,* for respondent.

[1]Reported in 9 P. (2d) 1112.

HOLCOMB, J.—This action was brought by respondent to recover upon a promissory note, signed by appellants L. E. Bounds and I. J. Bounds on February 1, 1930, maturing February 1, 1931, in the sum of two thousand dollars and interest.

The complaint first alleged that, at all times thereinafter mentioned, L. E. Bounds and Martha Bounds were husband and wife, and I. J. Bounds and Dorothy Bounds were husband and wife; and that the indebtedness sued upon was a community obligation of both parties therein named. It was then alleged that on the day above stated, for a valuable consideration, L. E. Bounds and I. J. Bounds, acting individually and for and on behalf of their respective communities, executed and delivered to respondent the promissory note above mentioned, which was then set out in full.

The averment was then made that the note was due and payable at the time the action was commenced, and that there was due thereon the sum of two thousand dollars, with interest at seven per cent per annum from February 1, 1930, until paid, for which demand had been made and payment refused. Two hundred fifty dollars was alleged to be a reasonable attorney's fee to be allowed respondent in the action. Judgment was prayed in accordance with the allegations of the complaint.

For answer to the complaint, appellants jointly alleged that they denied the allegations that, at all times mentioned in the complaint, the relations of husband and wife existed between the respective spouses, and denied that the indebtedness sued on was community obligation of the parties named therein. It was also denied that the note was due and payable at the time the action was commenced, and denied that two hundred fifty dollars was a reasonable sum to be allowed as attorney's fees to respondent. Appellants then al-

leged the following affirmative defense and cross-complaint:

"(1) That on or about February 1, 1930, through the defendants L. E. Bounds and I. J. Bounds, executed the instrument referred to in plaintiff's complaint.

"That the said consideration for note was a renewal of a former note under date of March 10, 1928.

"That the money advanced by the plaintiff was for the benefit and use of the estate of Ella Frances Bounds, deceased, of which L. E. Bounds and I. J. Bounds were the executors.

"(2) That the marital community composed of L. E. Bounds and Martha Bounds, husband and wife, and I. J. Bounds and Dorothy Bounds, husband and wife, received no benefits from the money so loaned from the plaintiff, nor was it for the benefit and use of the community above named, but was personal to and for the use of the estate of Ella Frances Bounds, of which Martha Bounds and Dorothy Bounds, a part of the marital community above referred to, are not a party in interest or in any way concerned therein.

"(3) That in or about the latter part of January, 1931, the plaintiff, William Steward, came to these defendants, to-wit, L. E. Bounds and I. J. Bounds, respectively, for the payment or in some way, adjusting or securing the instrument set out in paragraph two of plaintiff's complaint, and after some discussion between the parties, the plaintiff offered to pay off a certain mortgage on property standing in the name of the estate of Ella Frances Bounds, deceased, to wit, Lot Seven (7), Lot Eight (8), and Lot Nine (9) of Block Two (2) of Haynes Addition to North Yakima, now Yakima. The amount due on said mortgage was four thousand four hundred seventy ($4,470) dollars; and that he further offered, after paying off the mortgage above referred to, which was owing and in favor of the Yakima Savings & Loan Association, to take a first mortgage, in his, the plaintiff's name, and added to the amount paid to the Yakima Savings & Loan Association, to satisfy the mortgage held by the said Yakima Savings & Loan Association and added to the

same, the principal and interest of the note referred to in plaintiff's complaint, thereby giving plaintiff a first mortgage on the above described property in the sum of six thousand four hundred seventy ($6,470) dollars. Upon this offer being made, these answering defendants said that they would accept the proposition, providing arrangements could be made with the loan association and providing they could get the deed from the Yakima Mortgage & Bond Company, which was holding the same for a commission due them from L. E. Bounds and I. J. Bounds, of $150; and that these defendants, L. E. Bounds and I. J. Bounds, negotiated with the Yakima Savings & Loan Association for the taking up of the mortgage that they held, and that the said Yakima Savings & Loan Association agreed to accept the payment and satisfy the mortgage that they held. The Yakima Savings & Loan Association also agreed to release and deliver the deed, and that the defendants paid the commission to the Yakima Mortgage & Bond Company, and did everything and all things necessary to be done, on their part, and they accepted the offer made to them by the said plaintiff, whereupon the plaintiff informed these defendants that he would return to Seattle, secure the money and then in a few days return to Yakima and complete the transaction, all of which was agreed to. That thereafter, towit, on February 2, 1921, the said plaintiff informed these defendants by wire that he was ready to close the transaction and that the defendants were to have the deed ready, and that he would be in Yakima the following Thursday; and that these defendants did everything and all things of them required to be done, and that the plaintiff did come to Yakima as these defendants had been advised by him that he would do, and at which time he refused to perform the agreement made and entered into as above stated, to the irreparable damage of these defendants.

"(4) It was further understood and agreed between the parties, that the plaintiff in taking the first mortgage as above stated, was to do so at the same rate of interest and terms and conditions with which the defendants were obligated under the mortgage to the

Yakima Savings & Loan Association, except that the mortgage to the plaintiff was to be paid off at the rate of $100 per month, with the option on the part of the defendants to pay any larger or greater sum at their option.

"(5) That these answering defendants and cross-complainants paid the commission of $150 to the Yakima Mortgage & Bond Company and secured the deed which they now have; that these answering defendants informed the plaintiff that it would be necessary to get an understanding with the Yakima Savings & Loan Association for the liquidation of that loan, as well as securing the deed from the Yakima Mortgage & Bond Company, and pay what was due them for the deed, and make such other and necessary arrangements in order to protect plaintiff, all of which said plaintiff understood and to which he agreed.

"(6) That these defendants are unable to secure any additional or other loan in order to meet the note due and owing to the plaintiff, and that these answering defendants relied upon the agreement with the plaintiff, as hereinabove stated, and without the court requiring the plaintiff to specifically perform his agreement these defendants will be irreparably damaged, in that they will be unable to secure any sufficient or further loan to take care of the obligation that is due and owing to the plaintiff as alleged in plaintiff's complaint.

"(7) That the defendants were at all times and are now ready, able and willing to perform their part and do everything and all things as agreed between the plaintiff and defendants, and that these defendants have, on their part, done and performed everything and all things agreed to between the parties, and have made the necessary arrangements to complete the transaction as far as these defendants are concerned, and that these defendants have no speedy or adequate remedy in law, and these defendants respectfully request the court that the plaintiff be required to carry out the agreement as made by him with these defendants, as above set forth, and that the said defendants have specifically performed all of such agreement and

that the same be so decreed; and that these answering defendants do hereby tender into court their note and mortgage in conformity to the agreement heretofore made with the plaintiff.

"WHEREFORE, defendants pray that the plaintiff take nothing by his alleged cause of action, and that the plaintiff be required to advance the money to the Yakima Savings & Loan Association to satisfy the mortgage held by them upon the property of the defendants, described in this answer and cross-complaint, and that the defendants execute and deliver to the plaintiff the necessary mortgage as agreed to by the parties herein, and that the defendants have their costs and disbursements incurred in the preparation and defense of this action, and such other and further relief as to the court may seem just and equitable."

Respondent replied to the answer, admitting the allegation of the execution and delivery of the note in suit, and denying the other affirmative defense and counterclaim set up in the answer.

Upon the issues so framed, the cause proceeded to trial before the court without a jury. Respondent introduced the note in evidence, testified that it had not been paid, and at the time of the execution of the note appellant I. J. Bounds was a married man, and rested. A *prima facie* case was thus made, because appellants had pleaded the signing of the note by the husbands.

Appellants then offered evidence in support of their counterclaim. Respondent objected to the introduction of any evidence in support of the counterclaim, for the reason that it did not state facts sufficient to constitute a defense against the note, and that an agreement to loan money could not be specifically enforced. The trial court sustained the challenge, whereupon appellants made an offer of proof which reads:

"MR. BOUNDS: Mr. Steward came over here last January and came to my office together with my

brother—I want to state that this cross-complaint, they haven't moved against it—Mr. Steward came over here the latter part of January and came to my office, and he had with him this note; he said that he had a loan coming due in Seattle, I think the 19th of February, two or three weeks after he was here in January, and he had to have collateral security—Mr. Steward has been a friend of the family for thirty years or more— he came over and he said that he knew the situation of our estate, we had a lot of property, all encumbered, and we borrowed this money to take care of the debts of the estate in 1928, and it hadn't been paying, we didn't realize anything on it; he said he appreciated our situation and knew that we couldn't pay the note. He says, 'you can help me a great deal if you can give me some security, I have got to have some collateral to meet an obligation.' I told him that everything we had was mortgaged, and he says, 'How about this Pleasant street property?' That is where I am living, the mortgage was handled by the Yakima Savings & Loan Association, for $5,000, and it had only run for about six months, and they wouldn't liquidate under a year, and I says to him, 'We have only had this mortgage a short time, and,' I says, 'you can't get the Yakima Savings & Loan to liquidate these loans under a year, and to put an additional mortgage on this property is going to embarrass the estate and us; we have got to have money to do business with; we have cattle, we have a big ranch and we have to borrow money, and if we put another mortgage on it it is going to embarrass us.' He says, 'You can go over to the Yakima Savings and Loan and see if they will liquidate it and I will pay that off and add to it the amount of this note and it will be a first mortgage.' I demurred to that, I says, 'They wont liquidate under a year, and' I says, 'we don't hold the deed, the real estate company that closed the deal refused to deliver the deed until we paid a commission which we contended we didn't owe.' He says, 'It is going to help me a lot; I need this collateral;' and he says to my brother, 'You and I will go over to the Yakima Savings and Loan and see if we can get that paid out.' I left the two of them

in the office and went over to Vincent Roberts and told him we had an opportunity to liquidate that mortgage and he says, 'It hasn't been running very long, but,' he says, 'I will make it a personal matter and do it.' We figured out the amount due, forty-four or forty-five hundred dollars, something like that; the installments were due the 8th of the month. I came back and gave him the slip of paper with the amount due, and he says 'You can get the deed.' And I went out and saw John Siepman, and I says, 'I guess I will have to pay you that $150.' He says, 'If you pay it you can have the deed.' So I came back and I says to Mr. Steward, 'We have made the arrangements, I have it all fixed up to get the deed, and I have fixed it up with the Yakima Savings & Loan.' He says, 'I will go back to Seattle and get the money and in two or three days I will be back.' I says, 'You wire me and I will have everything ready,' and on February 2nd we got a telegram from Mr. Steward from Seattle: 'Will be in Thursday, have deed ready, signed, William Steward.' I had the deed and had it here when he came over; he came up to the office and my brother came to the office, and I says, 'All right, I will get up the mortgage and note,' and we sat there talking, and I went and got a mortgage and note and gave them to the girl to get ready, and then my brother left the office for a while and while my brother was gone Mr. Steward says, 'I think you ought to pay me interest on the old note;' and I says, 'That has been taken up, our agreement was that you was to pay off the Yakima Savings & Loan and add your note and interest to it; we are ready to go on with it, we have made all the arrangements on your own proposition; the paper will be ready in ten or fifteen minutes.' 'Well,' he says, 'I want interest on that old note.' I says, 'You waived the interest on it and drew up a new note, that is our agreement.' He says, 'If you don't pay the interest on the old note I wont go through with it.' I says, 'We have made all the arrangements and it is going to embarrass us a lot if you don't go through with it.' Well, we argued around there for some time, Mr. Willis was in the office at the time, and finally Mr. Steward says, 'Well, I will go,' and he left and in a

few minutes we were served with papers; apparently when he come over he never intended to go through with the deal, he had the papers all ready drawn up in Seattle.

"Now, we have pleaded sufficient facts to admit all this evidence and they have never moved against it; we alleged there was an agreement. We can't raise any money on any of this property, and if judgment went against us in this case it would cause us to go broke; we pleaded sufficient, without a motion to make more definite and certain, and that is the situation and we will amply support it by authorities in this state. First, there was a consideration to the promissee; he wanted collateral security, he knew judgment on this note was no good, and he informed us and we assumed it to be the fact that he had an obligation that he had to meet and he could get this by using this collateral security. It was embarrassing to us, we had to go and make the arrangements with the Yakima Savings & Loan Association and had to place an additional mortgage on the property; we owed the bank and we had a bond issue on a thousand acre ranch past due, and we had to pay the water, all these were past due with interest, and putting an additional mortgage, this was explained to him and he understood that in order to accommodate him we accepted the agreement. The mortgage to the Yakima Savings & Loan was on the installment plan, $60 a month, and he says, '$60 is pretty small, can't you make it more?' He says '$100?' I says, 'That is pretty heavy, things are tough over here, everything we have is in bad shape, I will make it $75.' 'No,' he says, '$100 will help me fine,' he says, 'you needn't worry, I will take care of you; that will always be your home; it will be a great help to me,' so I says, 'All right, I will make it $100.' That was the understanding, and now we have pleaded those facts sufficiently.

"The Court: I think the objection is well stated, the pleading does not constitute a defense, and I will sustain the objection.

"Mr. Bounds: We offer to prove at this time, the former statement that I have already made in support

of our cross-complaint and answer, and I want to add, or rather enlarge on the fact that we are unable, after strenuous effort over a period of several months, to make any arrangements to secure money to meet this note; that we made the arrangements in accordance with the agreement with Mr. Steward and we relied on it; that judgment would require the Yakima Savings & Loan and the Liberty Savings & Loan to proceed against L. E. Bounds and I. J. Bounds personally, and against the estate of which the last two named are the executors and principal beneficiaries, and that without any question, judgment would precipitate either a receivership or bankruptcy, and that there is no remedy at law that we could possibly figure out.''

The trial court sustained the objection to the entire offer of proof on the ground that it was incompetent under the pleadings, and for the reason that the affirmative defense and cross-complaint, as supplemented by the offer of proof, did not state facts sufficient to constitute a defense, and that a court of equity could not enforce specific performance for the loan of money.

It is obvious that the trial court, probably inadvertently, when considering the major question involved in the affirmative defense and offer of proof, overlooked the affirmative issue, tendered by appellants both by their written pleading and their oral offer of proof at the trial, that the liability had been incurred in 1928, by, for and on behalf of the estate of their mother, Ella Frances Bounds.

Our statutes, Rem. Comp. Stat., §§ 6890 and 6891, define separate property as that acquired by either spouse, (1) before marriage, or (2) by gift, devise, or inheritance and the rents, issues and profits of the property so acquired.

The legal presumption is, of course, that, when money is borrowed, it becomes a community liability. *Fielding v. Ketler,* 86 Wash. 194, 149 Pac. 667; *Kuhn*

*v. Groll,* 118 Wash. 285, 203 Pac. 44; *Denis v. Metzenbaum,* 124 Wash. 86, 213 Pac. 453; *Gould v. Culver,* 148 Wash. 689, 270 Pac. 93. This, however, is a rebuttable presumption (*In re Sanderson's Estate,* 118 Wash. 250, 203 Pac. 75), and community may be changed into separate and separate into community property, and when the status is once established, it is presumed to be maintained. *Jacobs v. Hoitt,* 119 Wash. 283, 205 Pac. 414.

This being an issue of fact tendered by appellants, which they offered to prove and of which their offer tended to show that respondent had knowledge at the time the original liability was incurred, it was error to sustain the objection to the affirmative defense and offer of proof upon that issue and enter judgment against all appellants as a community judgment.

 It is vigorously insisted by appellants that their affirmative defense and counterclaim stated facts sufficient to justify the court to enforce the agreement and compel specific performance.

Respondents concede that there was consideration for the agreement if the promise can be enforced and specifically performed, but contend that specific performance cannot be enforced for an agreement to loan money. Appellants state that they did not plead or offer to prove damages, because this is not an action to recover damages, it being impossible in this case to ascertain and measure the damages, making the damage irreparable.

25 R. C. L. 231 is quoted as follows:

"But in this country it has been held that specific performance will not be decreed of a contract to give security for a debt, even by mortgage on real estate, where the insolvency of the debtor, or some other special ground for equitable relief, is not alleged, since breach of the contract will give an immediate right of

action and the measure of damages will be the amount of the debt, so that the remedy at law is complete.

"Where the complainant's remedy at law is of no value by reason of the insolvency of the promisor, equity for this reason will decree specific performance."

It may be admitted that the above quotation states the rule in this state, and we have applied it ourselves in *Klitten v. Stewart,* 125 Wash. 186, 215 Pac. 513. That rule applies only, however, in the case of an insolvent debtor who, at the time of borrowing money, agrees to give certain security and it is otherwise impossible to obtain satisfaction of the debt against the debtor without the security, as in the *Klitten* case, *supra.*

It is also the general rule in this country, as well as in England, that specific performance will not be enforced of an executory agreement either to borrow or lend money. 25 R. C. L. 231; *Rogers v. Challis,* (Eng.) 27 Beav. 174, 54 Eng. Rep. 68; *Sichel v. Mosenthal,* (Eng.) 30 Beav. 370, 54 Eng. Rep. 932; *South African Territories v. Wallington,* (Eng.) App. Cases 1898, 309. All the judges agreed in the last case it was well settled in the law of England that a promise to loan money cannot sustain a suit for specific performance. To the same effect, see *Cohn v. Mitchell,* 115 Ill. 124, 3 N. E. 420; *Conklin v. Peoples Building Association,* 41 N. J. Eq. 20, 2 Atl. 615; *Gooden v. Moses Bros.,* 99 Ala. 230, 13 South. 765; *Norwood v. Crowder,* 177 N. C. 469, 99 S. E. 345; *Hixson v. First National Bank,* 198 Iowa 942, 200 N. W. 710; *Leach v. Fuller,* 65 Colo. 68, 173 Pac. 427, *Columbus Club v. Simons,* 110 Okla. 48, 236 Pac. 12, 41 A. L. R. 350.

In the last cited case, the Oklahoma court recognized the general rule as almost uniform, but found that there were exceptional and equitable circumstances in

the case there which justified compelling specific performance of a promise to lend money. We agree with the court there that there were exceptionally equitable conditions existing in that case that possibly justified the decision. For further authorities, see case notes to that case beginning p. 357, 41 A. L. R.

We can see nothing so exceptional in the circumstances here as to take the case of appellants out of the general rule.

Appellants now contend, in their reply brief, that the agreement they set up constituted one for an extension of time for the payment of their indebtedness. It was not so alleged in either their affirmative pleading or their offer of proof, which was what the trial court had to consider.

We conclude that appellants cannot compel specific performance of the alleged promise to lend them the sums of money by respondent.

The judgment must be reversed because of the prevention of appellants from establishing their affirmative defense that the liability was not the community, but a separate liability, and the judgment runs against I. J. Bounds and wife as a community.

Upon the remand of the case there is, of course, nothing to prevent appellants from reframing their pleading so as to plead an extension of time, if it accords with the truth, for the payment of their indebtedness, as well as to prove the separate character of the liability.

The judgment is reversed and remanded, with instructions to proceed in accordance with this opinion.

TOLMAN, C. J., BEALS, MAIN, and MILLARD, JJ., concur.