[No. 25750. Department One. January 9, 1936.]

FIRST NATIONAL BANK OF JUNEAU, *Respondent and Cross-appellant,* v. W. A. ESTUS *et al., Appellants.*[1]

*Wettrick & Wettrick* and *Robert A. Devers,* for appellants.

*Congdon & Jessup,* for respondent and cross-appellant.

[1]Reported in 52 P. (2d) 1243.

GERAGHTY, J.—The plaintiff, First National Bank of Juneau, sued the defendants, W. A. Estus and wife, to recover upon two promissory notes signed by the husband. The complaint contained two causes of action; the first upon a promissory note for $9,790, payable to the plaintiff at its bank in Juneau, the second upon a note for $478.28 given by Estus to the Pacific Label & Carton Company and assigned for collection to the plaintiff. A community judgment was sought against the defendants, as well as a separate judgment against the husband.

After trial to the court, judgment was rendered against the husband, but not the community, upon the first cause of action. A community judgment, as well as a separate judgment against the husband, was rendered upon the second cause. The defendants appeal from that part of the judgment granting recovery, either as against the husband or the community, on the second cause of action. The plaintiff cross-appeals from that part of the judgment denying recovery against the community upon the first cause. The plaintiff will be referred to as respondent, notwithstanding the cross-appeal.

For many years prior to 1918, W. A. Estus, with his wife, lived in Seattle. In the early part of 1918, they went to Juneau, Alaska, where the husband, with two associates, Hansen and Jaeger, established a cannery and organized an Alaska corporation, the Northern Packing Company, to carry on the business. Later, Jaeger withdrew, and all the stock in the corporation was owned by Estus and Hansen. Estus was president and appears to have managed the business.

Estus testified that he paid his own expenses to Alaska, but that, other than this, he put little in the way of cash into the business; that the business was established on credit extended by the bank and with

money advanced by Hansen. The bank made advances to the cannery from time to time and notes were taken, signed by the company, by Estus as president, and endorsed by him personally. These advances were made between the time when the corporation was organized in 1918 and its failure in 1920 or 1921.

The note sued on in the first cause of action was given by Estus in 1927 to cover the debt evidenced by these company notes, upon which he was bound as an endorser. While the company was in business, it purchased labels from the Pacific Label & Carton Company on open account. Estus had not personally bound himself for this debt at the time it was incurred by the company. In 1923, however, and after the failure of the cannery business, he gave the note sued on in the second cause of action to the carton company.

Estus and wife took their children, son and daughter, to Juneau in 1918. The family remained there until September, 1920, when they returned to Seattle. They had spent the winters in Seattle, with the exception of one season when they did not return. After coming back in the fall of 1920, Mrs. Estus did not return to Alaska until 1924, returning at that time to Seldovia, where her husband was employed.

The contention of the appellants is that their domicile was in Alaska from the time of their removal there in 1918 up to the time of trial. The respondent contends the appellants did not at any time abandon their domicile in Seattle.

The evidence on this issue was not very satisfactory. The ninth and tenth findings of the court follow:

"(9) That at the time the obligations were incurred for which the note set forth in plaintiff's first cause of action was executed in satisfaction of, the defendants W. A. Estus and Stella Estus, were domiciled citizens of the territory of Alaska.

"(10) That at the time the note set forth in plaintiff's second cause of action was executed the defendants, W. A. Estus and Stella Estus, were domiciled citizens of the state of Washington and occupied the status of a marital community of husband and wife."

In an oral opinion at the close of the case, the court said:

"There is no question to begin with that the situs of the original contract was in Alaska. Neither is there any question in my mind from the testimony which has been given here but what the defendants at that time were domiciled and their residence was in Alaska. That being true there being no community property law in Alaska, as far as cause of action number one is concerned the marital community will be dismissed from any further liability.

"Regarding the second cause of action under the testimony that was given, it becomes a very serious question as to where the residence of these parties was at that time. I think under the testimony given by Mrs. Estus, I don't see how you can get away from it, but their legal residence was in Seattle, and they were domiciled in Seattle."

On the question of domicile and the separate status of the husband's stock ownership in the cannery, it cannot be said that the evidence preponderates against the court's finding. Mrs. Estus testified that she went to live at Juneau and did live there until "we went broke."

As Mrs. Estus returned to Seattle in September, 1920, the court must have taken that as the time when appellants resumed their Seattle domicile. Accepting the court's findings, we have this state of facts: The appellants were legally domiciled in Alaska from the early part of 1918 until the fall of 1920. During this time, the canning company was organized as an Alaska corporation, the husband owning a large part, presumably one-half, of its capital stock. During this

period, the debts giving rise to the two notes were incurred in relation to the business of the cannery. The bank debt was evidenced by notes given by the company and endorsed by the husband, while the debt owing to the label and carton company was on open account and not a personal debt of Estus. The notes sued on were executed by the husband after the resumption of their Seattle domicile.

The court properly concluded that, since the community property law does not obtain in Alaska, the husband's interest in the cannery stock was his separate property, and that the individual note given by him to the bank in 1927 to take up the original notes had relation to his separate property and did not bind the community.

We think, however, the court erred in holding that the note given by Estus to the label and carton company was a community obligation. While it was given in 1923, after the appellants had resumed their Seattle domicile, it was given to cover a preexisting obligation of the cannery company and had relation to the husband's separate property. The note sued on in the first cause of action was likewise given after the appellants were domiciled in Seattle, but, because the husband had endorsed the original notes, the court properly considered the later note as a mere evidence of the original debt. The relation of the husband to the carton company debt was different. He was not originally bound on that obligation. He assumed it when he executed the note in 1923, and it may be that the court considered this a new and independent obligation, created by the community through the husband's act after their return to Seattle. But the community could be in no way benefited by the execution of the note. The note had relation wholly to the Alaska business, the separate property of the husband.

The appellant husband contends that the carton company note was executed by him without consideration, because the business had failed. The evidence in the record is not clear, but we are warranted in assuming that he still had some interest in connection with the cannery business that he desired to protect by assuming the company's debt, and this would be sufficient consideration for the note.

Whatever interest he retained in the Alaska business remained his separate property after he resumed his domicile in the state of Washington. *Myers v. Vayette,* 146 Wash. 1, 261 Pac. 647. Any obligation incurred in relation to that business would, therefore, be his separate debt.

The cause will be remanded to the superior court, with direction to modify the judgment so that it will run only against the appellant W. A. Estus, and not bind the community. The appellants will have their costs.

MITCHELL, STEINERT, TOLMAN, and BLAKE, JJ., concur.