[No. 33219. Department One. September 1, 1955.]

GENEVA FINLEY, *Appellant*, v. ALAN C. FINLEY, *Defendant*, ROBERT E. BUNDY, *Respondent*.[1]

[1]Reported in 287 P. (2d) 475.

*Everett O. Butts,* for appellant.

*Kennett, McCutcheon & Soderland* and *Robert C. Wells,* for respondent.

SCHWELLENBACH, J.—This is the second appeal in this case. See *Finley v. Finley,* 43 Wn. (2d) 755, 264 P. (2d) 246. In the first appeal, we reversed the trial court, which had granted judgment on the pleadings in favor of Bundy, and remanded the cause for trial on the merits.

Plaintiff, Geneva Finley, sued her husband for divorce, which was granted, and joined Robert E. Bundy in the divorce action for the purpose of quieting title to certain real property in King county. In the second trial, the court entered judgment in favor of Bundy, and this appeal follows.

About seventeen years before the trial, Geneva Finley and her then husband, S. R. Hemphill, entered into a contract to purchase the property where she now resides. In 1943, in contemplation of divorce, she borrowed money, paid Hemphill for his community interest in the property, obtained a quitclaim deed from him, and assumed the balance of the contract. She married Alan C. Finley on May 25, 1945, and they thereafter resided on the property. In October of 1946, Mr. and Mrs. Finley went to Idaho to contact a W. W. Force with reference to the purchase of an acre of land (the property involved in this action) *immediately* adjoining her property where they resided. Force owned a half interest, and the other half was owned by an estate which was then in the process of being probated. February 8, 1947, Force wired Mrs. Finley that he would be in Seattle the following week and that the deal could be closed. When he arrived he was paid cash for the property.

The money to make the payment was loaned by Gunder Birkeland. October 28, 1946, Geneva L. Finley and Alan C. Finley executed a promissory note in the sum of $2,500 to Gunder Birkeland. The note provided:

"As collateral security for the payment of this note and all other indebtedness now or hereafter owing from me to said party, I hereby pledge and deliver to payee the following security: Assignment of real estate contract bearing the

date of October 20th, 1943. Under which S. R. Hemphill and Geneva L. Hemphill are the sellers, and Geneva L. Hemphill is the purchaser."

October 28, 1946, Geneva L. Finley and Alan C. Finley, her husband, as security for the payment of the $2,500 note, assigned to Gunder Birkeland the contract for the purchase of her property.

January 29, 1947, the heirs of the estate involved executed a warranty deed conveying their half of the property to Alan C. Finley and his wife, Geneva L. Finley. February 7, 1947, W. W. Force executed a warranty deed conveying the other half to Alan C. Finley and his wife, Geneva L. Finley. These two deeds, instead of being filed for record, were registered under the Torrens act, apparently by Finley.

February 13, 1947, the superior court for King county ordered the issuance of a new certificate to Alan C. Finley and Geneva Finley, his wife, covering the property involved.

March 27, 1951, in the superior court for King county, Robert E. Bundy obtained a judgment of $20,000 against Alan C. Finley, individually, and the marital community composed of Alan C. Finley and Geneva Finley, his wife, and each of them. The action as to Geneva Finley, in her individual capacity, was dismissed with prejudice. In that action, the defendant Geneva Finley appeared in person and by her attorney of record, Everett O. Butts, and the defendant Alan C. Finley appeared in person and acted as counsel for himself.

By virtue of a writ of execution issued November 3, 1951, the acre involved in this action, together with other property belonging to Alan Finley, individually, was sold at sheriff's sale to Bundy, and an order was issued confirming the sale. On November 7, 1952, a sheriff's deed was executed to Bundy. December 12, 1952, the superior court ordered that, as to the property involved in this action, the certificate of title theretofore registered and filed in the name of Alan C. Finley and Geneva Finley, his wife, be canceled and that the title to the property be certified in the names of Robert E. Bundy and Ruth A. Bundy, his wife.

Mr. Finley did not testify at the trial of this action. His wife stated that he was not mentally competent to testify. He apparently had been released from the penitentiary a short time previously. Mrs. Finley testified that, at the time of their marriage, she and Finley orally agreed that he was to have no interest in her property or earnings, and that she was to have no interest in his property; that she paid the taxes on the property involved with her own money; that she made the payments on the note and that Finley never paid a cent; and that she never saw the deed from Force and was amazed to later discover that it was executed to both of them.

The trial court did not believe her testimony regarding the oral agreement with Finley, nor her testimony that she had never seen the deed from Force. It found that the loan was made to the two people, Alan C. Finley and Geneva Finley, husband and wife, and concluded that the property was never the separate property of Geneva Finley and was, from the date of its purchase, the community property of both. We feel that the court was justified in disbelieving Mrs. Finley's testimony in the two instances above mentioned. The evidence does not preponderate against the findings.

Appellant relies upon *Riverside Finance Co. v. Griffith,* 140 Wash. 322, 248 Pac. 786, wherein we said: ·

"No other deduction can be made from the testimony of appellant, the wife, than that all this property was acquired from the proceeds of property through several transitions and gains that the husband acquired from the sale of his former business, which was incontrovertibly separate property. These proceeds and the gains thereof were clearly traceable from the transactions testified to by the wife. Nor does the circumstance that, in purchasing the most valuable piece of property acquired by the husband after the sale of his business, a mortgage was given signed by both himself and his wife to the vendor for a portion of the purchase price render the property community property. It is well known that vendors, when dealing with purchasers who are married at the time, generally require both spouses to join in the conveyances and incumbrances for safety, by

estopping the other spouse from afterwards attacking the transactions."

Respondent points out that, in *Walker v. Fowler*, 155 Wash. 631, 285 Pac. 649, we overruled a portion of the *Riverside* case, saying:

"Counsel for appellant calls attention to a statement in *Riverside Finance Co. v. Griffith*, 140 Wash. 322, 248 Pac. 786, to the effect that the circumstance that, in purchasing a piece of real property acquired by the husband after the sale of his business (private business owned by him in his own separate right), a mortgage was given signed by both himself and his wife to the vendor for a portion of the purchase price, did not render the property community property. To the extent that the statement embraces that portion of the property represented by the amount of the purchase money mortgage, we are satisfied it is at variance with our earlier cases referred to herein, out of harmony with our subsequent case of *In re Parker's Estate, supra* [153 Wash. 392, 279 Pac. 599], and is hereby overruled."

Appellant contends that the *Walker* case involved a purchase money mortgage, that is, a mortgage given on the property being purchased, and that obviously the credit was extended not only to the two members of the community but upon the strength of the property being purchased.

In *Katterhagen v. Meister*, 75 Wash. 112, 134 Pac. 673, the trial court found that the title to the property involved was taken in the name of and deeded to George Meister and Mary Meister; that the purchase price was $6,500; that $1,600 was paid in cash out of the separate funds of the husband, and the remainder was paid by a promissory note and mortgage, signed by the husband and the wife; and that the note and mortgage were paid by the husband out of his separate funds. From the above facts, the court concluded that the property was the sole and separate property of the husband and entered judgment accordingly. We modified the judgment, saying:

"Upon the merits of the controversy, we think the learned trial court reached a wrong conclusion in holding that the property was the separate property of George Meister. He paid $1,600 upon the purchase price from his separate funds.

To that extent the property was separate. The remainder, or $5,050, was paid by the community. When the husband and wife united in the promissory note, the debt created was a community debt, and the money borrowed upon the note belonged to the community. *It is not material whether they borrowed the money of a third party and paid it to the vendor or gave their note direct to him as a part of the purchase price. The rule would be the same in either case.* Nor does the fact that the husband later paid the note out of his separate funds change the situation. The status of the property was fixed at the time of the purchase. These views are supported by an unbroken current of decisions in this court. *Yesler v. Hochstettler,* 4 Wash. 349, 30 Pac. 398; *Main v. Scholl,* 20 Wash. 201, 54 Pac. 1125; *Heintz v. Brown,* 46 Wash. 387, 90 Pac. 211, 123 Am. St. 937; *Ballard v. Slyfield,* 47 Wash. 174, 91 Pac. 642; *Denny v. Schwabacher,* 54 Wash. 689, 104 Pac. 137, 132 Am. St. 1140; *United States Fidelity & Guaranty Co. v. Lee,* 58 Wash. 16, 107 Pac. 870.

"In the case last cited, in considering the determinative principles in cases of this character, we said:

" 'Where property is acquired during marriage, the test of its separate or community character is whether it was acquired by community funds and community credit, or separate funds and the issues and profits thereof; the presumption always being that it is community property, but this presumption may be rebutted by proof.' " (Italics ours.)

See, also, *In re Dougherty's Estate,* 27 Wn. (2d) 11, 176 P. (2d) 335.

In the instant case, Mr. and Mrs. Finley went to Idaho to contact the owner of the property with respect to its purchase. They returned to Seattle and borrowed from Gunder Birkeland the money with which to pay the purchase price in full. They both executed to Birkeland a promissory note for $2,500. As security, they, both of them, assigned to Birkeland a contract to purchase another piece of property, which contract was the separate property of Mrs. Finley. Mrs. Finley made the payments on the note from her separate funds. The deeds to the property were executed to Mr. and Mrs. Finley, and the title was registered in the names of Mr. and Mrs. Finley. When Mr. and Mrs. Finley signed the note, the obligation to pay it became the obligation of the community. The $2,500 borrowed from

Birkeland became the property of the community. Community funds paid the purchase price of the property in full. The property thus became community property.

Appellant urges that the trial court erred in refusing to reopen the case for further testimony, after the oral pronouncement but prior to the entry of judgment. This motion was based upon an affidavit of Gunder Birkeland that the loan was made upon the credit of Geneva Finley, together with the security of her contract.

■ A motion to reopen a case is within the sound discretion of the trial court. In *Zackovich v. Jasmont,* 32 Wn. (2d) 73, 200 P. (2d) 742, we said:

"A motion to reopen a case is addressed to the sound discretion of the trial court, and the manner of exercising that discretion will not be disturbed by this court except for manifest abuse. [Citing cases.]"

Mr. Birkeland testified at the trial. We cannot find, under the circumstances, any manifest abuse of discretion on the part of the trial court in refusing to reopen the case.

The judgment is affirmed.

HAMLEY, C. J., DONWORTH, WEAVER, and OTT, JJ., concur.