[No. 68-40558-1.    Division One.    December 31, 1969.]
Panel 2

THE NATIONAL BANK OF COMMERCE OF SEATTLE, *Respondent*,
v. GEORGE R. GREEN *et al.*, *Appellants.*

*Sherwood & Forrest* and *Marshall Forrest,* for appellants.

*Livesey, Kingsbury & Livesey* and *Burtan A. Kingsbury,* for respondent.

*Frank W. Smith, Jr.,* amicus curiae.

HOROWITZ, A. C. J.—Defendant Green was indebted to the plaintiff on a $15,000 note executed while he was single, prior to his second marriage. Plaintiff garnished the sum of $5,000 on deposit in the joint account of the defendants Green in the defendant garnishee bank. Following trial of the garnishment action, the court, sitting without a jury, found that the sum garnished was the defendant Green's separate property and accordingly entered judgment in favor of the plaintiff against the garnishee defendant in the sum of $5,000. Defendant Green appeals, contending that the sum garnished is the community property of the second marriage.

The substance of the court's findings may be briefly summarized referring to the persons involved by surname only.

Green, in September 1966, owned separate property upon which in a personal financial statement to the plaintiff, he placed a value of $150,000. Early in 1967, Green was divorced from his prior wife. In the divorce he assumed substantial financial obligations but received the bulk of the properties which belonged to him or the marital community. The value is not disclosed by the record. In July 1967, Green executed and delivered a $15,000 note to the plaintiff, on the basis of which the writ of garnishment below was issued. In August 1967, after Green's divorce from his first wife, Green borrowed $5,000 from Cohen, Green giving his 30-day promissory note therefor. The court found that

This loan was paid and renewed every thirty days thereafter. Defendant Green would give Mr. Cohen a check for $5,000 and shortly thereafter Mr. Cohen would give Mr. Green a check for $5,000.00. On each occasion Mr. Green would give Mr. Cohen a note for $5,000.00. This transaction seems to have run from month to month, maturing about the first of each month, and after his marriage to his present wife, about November 1, 1967, Mr. Green continued the indebtedness by giving Mr. Cohen a check for $5,000.00 and receiving a check in similar amount, and giving a new note. This note was not signed by his present wife of George R. Green but was signed by him alone.

We understand by the finding supplemented by the evidence that the August 1967 note was paid by Green's check on September 1, 1967, and upon the check's clearing, Cohen again advanced the sum of $5,000 to Green upon Green's giving Cohen a new 30-day note; and that the same procedure of payment and re-borrowing was repeated on October 1st and November 1, 1967.

Green remarried about October 14, 1967. As in each prior note, the November 1, 1967 note was signed only by Green. The court further found that about November 1, 1967 Green also borrowed $10,000 from Cohen on the joint note of his present wife and himself. The proceeds of the $10,000 note were disposed of early in November 1967, although the use to which those proceeds were put does not appear.

On December 1, 1967, the November 1, 1967 note became due. The marital community about that time had some but virtually no assets. Green was without funds to pay that note. Accordingly, on December 1, 1967, he arranged to borrow $5,000 from one Martin. Martin wrote a check to Banks for $5,000 and Banks, on the same day, issued his check to Green in the sum of $5,000. Green deposited the Banks check in Green's joint account with his wife in the Seattle-First National Bank. On December 1 or 2, 1967, Green issued his check for $5,000 to Cohen in order to pay the November 1, 1967 note theretofore signed by Green. On

December 6, 1967, Green borrowed $5,000 from Cohen, receiving Cohen's check in that amount, which check he endorsed over to Martin. Martin deposited that check to his account. There was a delay in clearing the Martin to Banks check and the Banks to Green check, because of uncollected funds. There is no finding or evidence as to when Green's check to Cohen cleared nor is there any finding that it failed to clear. The evidence is that when the funds were finally collected in the Green account they were garnished about December 14, 1967.

The court found, as has already been pointed out, that beginning with the August 1967 loan from Cohen to Green, the "loan was *paid* and renewed every thirty days thereafter" (italics ours). The court further found that "the net result of the transaction set forth above (the December transaction) was that the loan from Mr. Cohen to defendant Green originating in the summer of 1967, was again *paid* off and renewed" (italics ours) and that "the transaction was intended to and did actually result in simply a continuation of the pre-existing indebtedness to Mr. Cohen which had existed since the summer of 1967." The court concluded that the $5,000 sequestered by writ of garnishment "was the separate property of defendant George R. Green and remained so. It was borrowed upon the separate credit of defendant Green and arose from a continuous transaction originating when defendant George R. Green was unmarried and continuing substantially unchanged thereafter during and after his marriage in October 1967." Green assigns error to the entry of the findings and conclusions which in substance treat the December 1967 transactions as a continuation of the preexisting indebtedness arising in the summer of 1967. The assignments of error raise the common issue of the community or separate status of the $5,000 sequestered by writ of garnishment and will be considered together.

The resolution of the basic question presented must be made in light of well settled principles of Washington law.

■ The statutory description of Washington's marital property system (RCW 26.16.010-26.16.210) is by no means complete and it is necessary to look to the decisions for amplifying detail. Generally, except for the separate property of each spouse acquired prior to marriage and the separate property acquired by either spouse after marriage, all other property acquired after marriage by either husband or wife or both is community property and the husband has the management and control of community personal and real property. The burden is upon one who claims that property acquired after marriage is separate property to establish such claim (*Rustad v. Rustad,* 61 Wn.2d 176, 377 P.2d 414 (1963)), by clear and convincing evidence. *Dizard & Getty v. Damson,* 63 Wn.2d 526, 387 P.2d 964 (1964); *Beyers v. Moore,* 45 Wn.2d 68, 272 P.2d 626 (1954); *Meng v. Security State Bank,* 16 Wn.2d 215, 133 P.2d 293 (1943).

■ The husband as manager of the community personal property is empowered to subject the community property to community debts by his sole act or signature. Thus a note executed by him after marriage is presumptively for the benefit of the marital community, and presumptively is a community obligation. *Fies v. Storey,* 37 Wn.2d 105, 221 P.2d 1031 (1950); *Meng v. Security State Bank, supra; Acme Fin. Co. v. Zapffe,* 161 Wash. 312, 296 P. 1050 (1931). The proceeds of the note are presumptively community property. See *Fies v. Storey, supra.* The "acid test" for determining whether the obligation or liability is separate or community in nature is the purpose for which the note is executed. *Fies v. Storey, supra.* See *Zarbell v. Mantas,* 32 Wn.2d 920, 204 P.2d 203 (1949). If the note is executed for the benefit of the marital community, the presumption of community obligation is not overcome. Thus money borrowed to pay off a community debt or to acquire a community asset is for a community purpose. *Kupka v. Dickson,* 72 Wn.2d 217, 432 P.2d 657 (1967); *Underwood v. Sterner,* 63 Wn.2d 360, 387 P.2d 366 (1963); *Beyers v. Moore, supra, Fies v. Storey, supra; Ness v.*

*Bender,* 18 Wn.2d 243, 138 P.2d 864 (1943); *Mattinson v. Mattinson,* 128 Wash. 328, 222 P. 620 (1924); *Rea v. Eslick,* 87 Wash. 125, 151 P. 256 (1915). If the debt is separate in character, the note is collectible only out of separate property. *Smyser v. Smyser,* 17 Wn.2d 301, 135 P.2d 455 (1943). The wife's signature presumptively does not create a community obligation and hence such a signature is not necessary to the creation of a community obligation. *Balkema v. Grolimund,* 92 Wash. 326, 159 P. 127 (1916). The husband's act or signature is enough. The purpose or proposed benefit may be evidenced by the community or separate uses to which the proceeds of a note or other obligation are put. See *Household Fin. Corp. v. Corby,* 61 Wn.2d 184, 377 P.2d 441 (1963); *Mapes v. Mapes,* 24 Wn.2d 743, 167 P.2d 405 (1946); *Steward v. Bounds,* 167 Wash. 554, 9 P.2d 1112 (1932); *Protzman v. Billings,* 120 Wash. 123, 206 P. 848 (1922); *Way v. Lyric Theater Co.,* 79 Wash. 275, 140 P. 320 (1914).

It follows from what has been stated that a joint signature of husband and wife presumptively renders the husband and wife each separately liable but also subjects the community property of the spouses to liability for community debts, not because the wife has signed but because the husband has done so. The presumptions created by joint signature of the spouses may be rebutted. Thus the evidence may show that the joint signatures create only a community obligation, (*Finley v. Finley,* 47 Wn.2d 307, 287 P.2d 475 (1955); *Auernheimer v. Gardner,* 177 Wash. 158, 31 P.2d 515 (1934)) or that the joint signatures, especially if secured by the wife's separate property, create only a separate obligation of the wife. *Graves v. Columbia Underwriters,* 93 Wash. 196, 160 P. 436 (1916). Whether the husband or wife has separate property at the time that the note is executed is not necessarily controlling. The power to contract and the ability to pay are not the same. See G. McKay, Community Property § 447 (2d ed. 1925). If, however, the husband's separate property is used as security for the payment of the note, that is some evidence not

necessarily conclusive that separate liability only was intended. G. McKay, Community Property, § 443 (2d ed. 1925). However, even a community debt may be secured by separate property. *Finley v. Finley, supra.* Accordingly we must go back to the "acid test" of purpose for which the indebtedness was created. *Fies v. Storey, supra; Zarbell v. Mantas, supra.*

In the instant case, the evidence shows that the purpose for which the $5,000 was borrowed from Cohen on December 6, 1967, was either to repay Martin for his advance by check to Banks followed by Banks' check to Green in the sum of $5,000, or to repay Cohen for the November 1, 1967 note which Green intended to repay by check to Cohen on December 1 or 2, 1967. In either case the proceeds of the loan were intended to be and were in fact used to repay a community debt presumptively owing either to Martin or Banks or Cohen. *Fies v. Storey, supra; McLean v. Burginger,* 100 Wash. 570, 171 P. 518 (1918). There is no evidence that the $5,000 sequestered was borrowed only on Green's separate credit. Neither Cohen nor Green so testified and there was no reason for Cohen to waive the presumptive community liability on the note. Accordingly the presumption of a community liability, whether arising from the November 1, 1967 or December 6, 1967 notes, was not overcome.

■ Plaintiff contends, however, and the court in effect found that Green's note of December 6, 1967 was really a renewal note and that the $5,000 garnished represents the proceeds of a renewal note, standing in no different status than the proceeds of the original August 1967 note. If this contention be accepted, the proceeds would be separate property. *Meng v. Security State Bank, supra; First Nat'l Bank v. Estus,* 185 Wash. 174, 52 P.2d 1243 (1936). It is necessary to distinguish, however, between a note discharged by payment (RCW 62.01.119, now RCW 62A.3-603; 11 Am. Jur.2d *Bills and Notes* § 963 (1963)) and a renewal note as such. A renewal note is a new note given for the old with no discharge of the old note as, for example, by

payment, unless so intended. *Dove v. Cowlitz Valley Bank,* 191 Wash. 429, 71 P.2d 555 (1937); *Boston Nat'l Bank v. Jose,* 10 Wash. 185, 38 P. 1026 (1894). The proceeds of the August 1967 note were separate property because they were the proceeds of a separate obligation. W. deFuniak, Community Property § 78 (1943); G. McKay, Community Property, § 457 (2d ed. 1925); *In re Estate of Finn,* 106 Wash. 137, 179 P. 103 (1919). The proceeds of a community note would be community property. *Acme Fin. Co. v. Zapffe,* 161 Wash. 312, 296 P. 1050 (1931). When Green paid off his August 1967 note in September 1967, the payment operated as a discharge of the August note and the September note for $5,000 was therefore a new and independent rather than a renewal note. The same is true with respect to Green's October and November notes. The November 1967 note was attempted to be paid off by Green's check dated December 1 or 2, 1967, in accordance with consistent prior practice of the parties. The December 6, 1967 note was therefore not intended as a renewal note but as a new and independent note. See *Boston Nat'l Bank v. Jose, supra.* The proceeds of that note were presumptively community in character. *Acme Fin. Co. v. Zapffe,* and other cases *supra.* The instant case is not a case of the proceeds of an original or prior note renewed, as so treated by the trial court, but a case of an intended new and independent note executed after marriage and presumptively a community note, the proceeds of which were to be used to pay a community debt. The fact of payment of the prior note as found by the court below, a finding not challenged and indeed supported by the evidence in the circumstances described, in our opinion requires a reversal of the judgment below based on the findings that the $5,000 sequestered by writ is Green's separate property.

▆▆▆▆ Plaintiff contends, however, that under the Laws of 1969, Ex. Ses., ch. 121[1], approved April 18, 1969, commu-

---

[1]"Section 1. Section 10, page 452, Laws of 1873 as amended by section 2405, Code of 1881 and RCW 26.16.200 are each amended to read as follows:

nity property is liable for the antenuptial separate debts of the husband. Plaintiff contends and Green denies that the newly enacted statute operates retroactively. It has long been the rule in this state that community property may not be used to pay the antenuptial or post nuptial separate debt, of the husband over objection by an interested spouse or other party. *Smyser v. Smyser*, 17 Wn.2d 301, 135 P.2d 455 (1943). It is true that a marital community is not a juristic person (*Household Fin. Corp. v. Smith*, 70 Wn.2d 401, 423 P.2d 621 (1967)) so that it can be said in a literal sense that the new statute has the effect of taking the property of A to pay the debt of B. Yet in a very real sense this is the effect of the statute. The statute adds to the burdens of and pro tanto alters community property, changing one of its characteristic incidents by subjecting community property now to a burden to which it was not subject at the time that the community property involved came into being. The statute does more than merely provide a new or additional procedure for the vindication of an existing right. It actually alters that right. We would be slow to hold under these circumstances that the legislature intended the statute to be applied retroactively in face of the well settled rule that unless there is an intention expressed in the statute or clearly implied therein, that the statute operate retroactively, the statute will be deemed to operate prospectively only. *State v. Ladiges*, 63 Wn.2d 230, 386 P.2d 416 (1963); *Sorensen v. Western Hotels, Inc.*, 55

---

"Neither husband or wife is liable for the debts or liabilities of the other incurred before marriage, nor for the separate debts of each other, nor is the rent or income of the separate property of either liable for the separate debts of the other: *Provided,* That the earnings and accumulations of the husband shall be available to the legal process of creditors for the satisfaction of debts incurred by him prior to marriage, and the earnings and accumulations of the wife shall be available to the legal process of creditors for the satisfaction of debts incurred by her prior to marriage. For the purpose of this section neither the husband nor the wife shall be construed to have any interest in the earnings of the other: *Provided Further,* That no separate debt may be the basis of a claim against the earnings and accumulations of either a husband or wife unless the same is reduced to judgment within three years of the marriage of the parties."

Wn.2d 625, 349 P.2d 232 (1960); *In re Estate of Wind*, 32 Wn.2d 64, 200 P.2d 748 (1948); *In re Cascade Fixture Co.*, 8 Wn.2d 263, 111 P.2d 991 (1941). It will be noted that the language of the statute in the use of the word "shall" speaks in a future tense. It is consistent with prospective operation rather than retroactive operation. Furthermore, construing the statute as operative prospectively rather than retroactively would avoid a possible constitutional objection based on a claim of impairment of vested rights and thus be a preferred construction. *George v. Day*, 69 Wn.2d 836, 420 P.2d 677 (1966); *Martin v. Aleinikoff*, 63 Wn.2d 842, 389 P.2d 422 (1964).

Our disposition of the plaintiff's contention makes it unnecessary to consider Green's further contention that the prejudgment garnishment statute pursuant to which the judgment below was entered is void as violative of due process. RCW 7.32; *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969). In that connection we express our appreciation for the able briefs of counsel and particularly for the very able amicus curiae brief of Assistant Professor Frank W. Smith, Jr. of the University of Washington Law School dealing with the issue of the constitutionality of RCW 7.32. Green not being injuriously affected by the prejudgment garnishment statutes involved may not raise the question of constitutionality. *State v. Lundquist*, 60 Wn.2d 397, 374 P.2d 246 (1962); *Griffiths v. State*, 28 Wn.2d 493, 183 P.2d 821 (1947).

The judgment is reversed.

UTTER and STAFFORD, JJ., concur.